MICHAEL LAURENCE (State Bar No. 121854)
BARBARA SAAVEDRA (State Bar No. 191628)
HABEAS CORPUS RESOURCE CENTER
303 Second Street, Suite 400 South
San Francisco, California 94107
Telephone: (415) 348-3800
Facsimile: (415) 348-3873
mlaurence@hcrc.ca.gov
bsaavedra@hcrc.ca.gov
docketing@hcrc.ca.gov

Attorneys for the Plaintiff HABEAS CORPUS RESOURCE CENTER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| HABEAS CORPUS RESOURCE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>and<br><br>MICHAEL B. MUKASEY, in his official capacity as United States Attorney General,<br><br>Defendants. | Case No. C 08-02649<br><br>**FIRST AMENDED COMPLAINT**<br><br>Administrative Procedure Act Case |

## PRELIMINARY STATEMENT[1]

1. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. section 552, the Administrative Procedure Act (APA), 5 U.S.C. sections 551-59 and 701-06, and the United States Constitution for injunctive and other relief. It seeks to set aside Defendants' Final Rule regarding Certification of State Capital Counsel Systems, 73 Fed. Reg. 75,327 (Dec. 11, 2008), or postpone the effective date of the Final Rule pending resolution of issues regarding Defendants' disclosure of requested public records, compliance with notice requirements and accommodation of public

---

[1] This Court authorized the filing of this Amended Complaint in the Case Management Order, filed September 24, 2008 (authorizing Plaintiff to file an Amended Complaint within fourteen days of the publication of Defendants' Final Rule).

1

comment on critical issues, justification for the Final Rule and response to public comments, and implementation of measures to ensure the promulgation of regulations free from conflicting interests, political considerations, and unlawful bias in favor of state prosecution interests. This action also seeks adequate searches, processing, and release of agency records Plaintiff has requested from Defendants.

2. The Antiterrorism and Effective Death Penalty Act of 1996 added Chapter 154 to Title 28 of the United States Code (Chapter 154) to provide procedural incentives in federal review of state capital convictions to states that guarantee death-sentenced prisoners the appointment and compensation of competent counsel and reasonable litigation resources necessary to develop constitutional claims in state habeas proceedings. Chapter 154 was modeled on the recommendations of the Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, often referred to as the Powell Committee, which identified the "pressing need for qualified counsel to represent inmates in collateral review" as one of the most serious obstacles to the resolution of capital post-conviction litigation. Ad Hoc Committee on Federal Habeas Corpus in Capital Cases Committee Report, 135 Cong. Rec. S13471-04, S13482 (1989). To address this deficiency, Congress enacted Chapter 154 to provide a "quid pro quo arrangement under which states are accorded stronger finality rules on federal habeas review in return for strengthening the right to counsel for indigent capital defendants." House Comm. on the Judiciary, Effective Death Penalty Act of 1995, H.R. Rep. No. 104-23, at 16 (1995).

3. The USA PATRIOT Improvement and Reauthorization Act of 2005 (Patriot Act) included provisions to amend Chapter 154. Whereas federal courts previously determined a state's eligibility under Chapter 154, the Patriot Act amendments placed authority for certifying a state mechanism's compliance with Chapter 154, and entitlement to its "fast-track" federal review, with the United States Attorney General. The Patriot Act amendments also directed the Attorney General to promulgate regulations to implement this certification process in accordance with the provisions of the APA. Although the Patriot Act amendments altered some provisions of Chapter 154 – such as removing a requirement that the state mechanism be contained in a statute, rule of court, or agency rule – they left intact the critical requirements that states appoint and compensate competent counsel

and provide reasonable litigation expenses for indigent death-sentenced individuals.

4. On June 6, 2007, former Attorney General Alberto Gonzales published Proposed Regulations to govern the process for, and set forth the criteria to be used in, certification determinations. Certification Process for State Capital Counsel Systems, Notice of Proposed Rulemaking, 72 Fed. Reg. 31,217 (June 6, 2007) (NPRM or Proposed Regulations).

5. Plaintiff submitted a FOIA request on July 18, 2007, for records related to Defendants' promulgation of the Proposed Regulations. In particular, Plaintiff sought information that Defendants considered in the development of the regulations and information regarding potential conflicts of interests by the Department of Justice staff responsible for the regulations.

6. Because Plaintiff's request sought information necessary to an adequate evaluation of, and participation in, the rule making at issue, Plaintiff asked Defendants to postpone the rule making until they disclosed the responsive records. In the alternative, Plaintiff requested that Defendants permit public comment on the Proposed Regulations after they disclosed the responsive records. Defendants rejected these requests and instead published the Final Rule on December 11, 2008, which is scheduled to become effective on January 12, 2008. *See* Certification of State Capital Counsel Systems, Final Rule, 73 Fed. Reg. 75,327 (Dec. 11, 2008) (Final Rule).

7. The Proposed Regulations generated considerable public comment that raised significant concerns about fairness in the manner in which the Attorney General created the Proposed Regulations and their failure to ensure a just process for resolving the critical determination of whether a state is entitled to expedite and truncate federal review of constitutional claims brought by death-row inmates. A key focus of the over 100,000 comments was the expectation that the Attorney General's regulations must provide minimum standards and definitions to implement the Chapter 154 requirements. In support of these arguments, commenters pointed to several sources of relevant legislative history, including the many existing judicial interpretations of Chapter 154 requirements unaltered by the Patriot Act amendments. Comments by members of Congress, the Judicial Conference of the United States, and a group of legal ethics professors and professional responsibility lawyers from across the country, among others, raised additional concerns about the fairness of the Proposed Regulations, their failure to provide procedural protections, and the Attorney General's

3

"impossible conflict of interest" in implementing certification proceedings.

8. Although the public comments included thousands of pages of complex legal and practical problems associated with the Proposed Regulations, Defendants' responses were either conclusory or provided no rational and defensible bases for Defendants' refusal to alter the Final Rule. Indeed, despite substantial constitutional and other serious problems raised during the public comment period, the Final Rule is nearly identical to the Proposed Regulations.

9. In their Final Rule, Defendants explain for the first time their belief that the Patriot Act amendments to Chapter 154 required the Attorney General to implement certification by invalidating existing judicial interpretations of Chapter 154 and eschewing any application of those existing decisions in its certification determinations. Moreover, Defendants further stated for the first time that the burden of creating standards and defining the operative terms for Chapter 154 eligibility lay solely within the discretion of the individual states. Although members of the Senate Judiciary Committee had asked Defendants to respond to a number of questions about their approach to the rule making prior to finalizing the Proposed Regulations, Defendants provided those answers only after the Final Rule had been submitted for publication, thus further ensuring that no notice was given about Defendants' controversial interpretations.

10. Defendants' unlawful failure to provide notice of critical interpretations of the Patriot Act amendments and their role in the certification process deprived Plaintiff and the public of an opportunity to comment meaningfully on Defendants' rule making. Defendants' failure to comply with their duty to provide notice of these controversial and unlawful interpretations of the Patriot Act amendments deprived Plaintiff and other interested parties, including members of Congress, of the opportunity to submit comments raising constitutional and other legal impediments to Defendants' misguided interpretation of the law.

11. In spite of the sweeping changes to certification requirements and the dramatic alteration to Chapter 154's scheme that they imposed, Defendants also unlawfully claimed for the first time in their Final Rule that certification is a limited ministerial function with no bearing on the future conduct of state actors or on the interpretation of law or policy. Defendants also eliminated in the Final Rule the only procedural safeguard that had been established in the Proposed Regulations:

4

a requirement that certification may not apply when a state mechanism changes in a manner that affects its compliance with Chapter 154.

12. Defendants did not provide any notice of these highly controversial and potentially unconstitutional interpretations and changes to existing law and thus prevented public comment on them. The politically and legally extreme nature of the Final Rule also confirms the influence of significant bias that has concerned large segments of the public since the initiation of this rule making process.

13. In response to many serious concerns about institutional and individual bias, Defendants concealed and deliberately misled the public about the substantial role of the Department of Justice Criminal Division in the promulgation of the certification regulations and the implementation of certification in the Department of Justice. When a supervising official responsible for developing the regulations proposed answering a Congressional inquiry by identifying the Criminal Division as one of two offices with whom he would "work closely" on the regulations, he was admonished by another official who stated that the Criminal Division should not be mentioned specifically because "doing so might invite attacks that, e.g., it is inappropriate to involve the Criminal Division in developing standards/procedures regarding the adequacy of state capital defense systems." In keeping with this concern, there was no mention of the Criminal Division in the Proposed Regulations, although the Final Rule now lists it as the responsible component for further inquires. Defendants also concealed from the public the specific bias and conflict of interests of the individual members of the working group that developed the regulations.

14. Moreover, a member of the Capital Case Unit assigned to the working group that developed the Proposed Regulations recommended and implemented procedures designed to conceal the pervasive and on-going role that state attorneys general had in the development of the Proposed Regulations, including steps to prevent interested parties from discovering ex parte communications that state attorneys general had with the Department of Justice.

15. Finally, in justifying the Final Rule, Defendants simply ignored many important comments on the numerous troubling issues that *were* apparent from the NPRM and carried out the

5

rule making in an arbitrary and unconstitutionally biased manner.[2]

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. sections 552 (a)(4)(A)(vii) and (a)(4)(B). The Court also has jurisdiction pursuant to 28 U.S.C. section 1331 and 5 U.S.C. sections 701-06. Venue lies in this district under 5 U.S.C. sections 552 (a)(4)(B) and 703.

## PARTIES

17. Plaintiff, the Habeas Corpus Resource Center (HCRC), is an agency in the Judicial Branch of the State of California. The HCRC provides legal representation to indigent men and women under sentence of death in state and federal habeas corpus proceedings and in executive clemency proceedings. The HCRC also is responsible for providing legal advice and developing resources on significant, recurring issues for use by appointed counsel in capital post-conviction proceedings. In addition to these duties, the HCRC works in conjunction with the California Supreme Court and other state agencies and actors to evaluate and contribute to rules and policies related to the representation of individuals sentenced to death.

18. Defendant Department of Justice (DOJ) is an agency within the meaning of 5 U.S.C. section 552 (f)(1) of the Executive Branch of the United States government. The following offices are components within DOJ: Office of Justice Programs; Office of Legal Counsel; Office of Legal Policy; Office of Legislative Affairs; Office of Intergovernmental and Public Liaison; Office of the Attorney General; Office of the Deputy Attorney General; Office of the Associate Attorney General; Criminal Division; Civil Division; Office of Attorney Recruitment and Management; Justice Management Division; and Office of Information and Privacy.

---

[2] At the time of the filing of this First Amended Complaint, state officials have declined to state whether they intend to apply for Chapter 154 certification after the Final Rule becomes effective. Inquiries about such intentions have been made to the Attorney General for the State of California on numerous occasions, but he has declined to provide any public indication whether he intends to do so, although a member of his staff participated in the development of the Proposed Regulations for the express purpose of ensuring that California would qualify for Chapter 154 certification under the Attorney General's regulations. Should the State of California or any other state announce an intention to seek the benefits of Chapter 154 pursuant to the Final Rule, numerous others legal issues will arise and Plaintiff may seek leave to file a Second Amended Complaint.

19. Defendant Michael B. Mukasey is the United States Attorney General and is the head of the United States Department of Justice. Defendant Mukasey is responsible for DOJ's compliance with the laws of the United States and corresponding agency regulations, including the laws and regulations at issue in this case.

## STATEMENT OF FACTS

### The Attorney General's Proposed Regulations

20. Defendants published a notice of proposed rulemaking (NPRM) for the certification regulations on June 6, 2007, identifying the Office of the Attorney General as the agency issuing the Proposed Regulations and the Office of Justice Programs as the agency contact. Certification of State Capital Counsel Systems, Proposed Rule, 72 Fed. Reg. 31,217 (June 6, 2007).

21. The preamble to Defendants' NPRM explained that the effect of the Patriot Act amendments to Chapter 154 was to assign to the United States Attorney General the determination of whether a state is eligible for the procedural benefits of Chapter 154. The NPRM noted that prior to the amendments, the Federal courts of appeals made such determinations. The NPRM also stated that "the only requirements that the Attorney General may impose for a state to receive certification are those expressly stated in chapter 154." 72 Fed. Reg. at 31,217-18.

22. Defendants stated in the NPRM that the purpose of the proposed rule was to implement certification as directed by the Patriot Act amendments and that they had consulted with "a number of groups . . . including representatives of state officials and both prosecution and defense interests concerned with capital case litigation" about the requirements for certification. *Id.* at 31,218. Despite the official representation in the NPRM's statement, Defendants' consultation with persons representing defense interests prior to the publication of the NPRM was minimal in comparison with their consultation with persons representing prosecution interests.

23. In later sections of the NPRM, Defendants defined some statutory terms pertaining to certification, included United States Supreme Court case law in the "relevant legislative history" guiding Defendants' understanding of the proposed definitions, and offered examples of what the Attorney General would deem sufficient and insufficient for a state mechanism to comply with Chapter 154 requirements. *Id.* at 31,218 (Sections 26.21 and 26.22). The NPRM described the

7

"mechanics" of the certification process in terms of public notice and comment. *Id*. at 31,218, 31,220 (Section 26.23).

24. The NPRM did not state or suggest in any way that the Attorney General believed that the Patriot Act amendments to Chapter 154 altered the existing requirements for Chapter 154 or changed the nature of the certification determination that previously had been made by the federal courts. Instead, the NPRM noted that the requirements of Chapter 154 had been in place since the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. *Id*. at 31,217.

25. The NRPM established a sixty-day period for public comment on the Proposed Regulations, with the deadline for comments set for August 6, 2007. Numerous members of the public, including Plaintiff, submitted requests for an extension of time within which to evaluate the propriety and effect of the Proposed Regulations. Senators Arlen Specter and Patrick Leahy of the Senate Judiciary Committee also submitted a request for an extension of time to comment on the Proposed Regulations, echoing public comments regarding the need for additional time to carefully evaluate the Proposed Regulations and noting that "it is crucial that the legislative changes to this complex and heavily litigated area of the law be successfully and appropriately implemented, especially given the tremendous stake for individual defendants." Letter from Senators Leahy and Specter, Department of Justice docket no. DOJ-2007-0110-0077, submitted Aug. 2, 2007.

26. Following these requests, Defendants reopened the public comment period with a new deadline of September 24, 2007, for the comments. Certification of State Capital Counsel Systems, Notice of Proposed Rulemaking; Reopening of Comment Period, 72 Fed. Reg. 44,816 (Aug. 9, 2007). The notice repeated that the Department had "consulted with a number of groups in developing this proposed rule," describing these as "extensive consultations." *Id*.

### Plaintiff's FOIA Request

27. Plaintiff submitted a FOIA request to the DOJ on July 18, 2007 (HCRC Request), seeking information related to the Proposed Regulations from eight components of the DOJ: Office of Justice Programs; Office of Legal Counsel; Office of Legal Policy; Office of Legislative Affairs; Office of Intergovernmental and Public Liaison; Office of the Attorney General; Office of the Deputy Attorney General; and Office of the Associate Attorney General.

8

FIRST AMENDED COMPLAINT
*HCRC V. US DOJ*, NO. 08-02649-CW

28. Plaintiff also requested and is entitled to a waiver of processing fees pursuant to 5 U.S.C. section 552(a)(4)(A)(iii) and corresponding agency regulations because the request was made for information in the service of the public interest and was not sought for commercial purposes.

29. The HCRC Request sought information about individuals and entities that Defendants consulted in the course of developing the Proposed Regulations and individuals within the DOJ responsible for developing the Proposed Regulations. In addition, the HCRC Request sought material related to the review of the Proposed Regulations by the Office of Management and Budget (OMB) and by the Office of Information and Regulatory Affairs (OIRA). Plaintiff also sought information about Defendants' hiring of Jennifer Goldstein, a former staff member to Representative Dan Lungren, one of the sponsors of legislation similar to the Patriot Act amendments to the Chapter 154, and her immediate assignment as a primary person responsible for drafting the Proposed Regulations.

30. The need for this information became apparent after Plaintiff began to learn of apparently substantial consultations regarding the Attorney General's Proposed Regulations, both before and after the NPRM, between the criminal prosecution components of DOJ and state prosecution officials and organizations. In contrast, Defendants did not engage in similar consultations with defense organizations, agencies, or individuals in any meaningful manner. Of particular concern to Plaintiff were indications that components with responsibility for criminal prosecution in the DOJ could have had a significant role in the Attorney General's rulemaking and that substantial, disqualifying conflicts of interests exist. The fact that the Proposed Regulations included factual examples that predetermined certification for some state mechanisms further heightened the concern of impermissible bias. This concern was validated when later disclosures revealed that one state capital prosecutor indicated that he worked with a Department of Justice official to ensure that examples in the Proposed Regulations were closely directed to address his state's mechanism.

31. Former Attorney General Alberto Gonzales, who was responsible for developing the Proposed Regulations, has been publicly implicated as the source of a number of actions and policies of the DOJ that are ethically and legally problematic. The Final Rule was issued by Defendant

9

Michael B. Mukasey, who has acknowledged his obligation to eliminate the effect of any ethically or legally questionable policies and/or procedures carried out by his predecessor.

32. The information Plaintiff sought in the HCRC Request was necessary to evaluate the Proposed Regulations meaningfully and, if appropriate, articulate its concerns during the public comment period. The information also is necessary to evaluate the Final Rule in a timely manner – i.e., before it goes into effect and allows Defendants to conduct certification proceedings that determine issues literally of life and death – and ensure that the Final Rule does not perpetuate serious conflicts of interests or biases that may have affected the Proposed Regulations under the former Attorney General.

**Responses to the HCRC Request and Other Department of Justice Communications**

33. Defendants divided responsibility for responding to the HCRC Request among three offices within the DOJ: the Office of General Counsel was responsible for responding for the Office of Justice Programs (OJP Response); the Office of Legal Counsel was responsible for responding directly (OLC Response); and the Office of Information and Privacy was responsible for responding on behalf of the remaining six components.

34. The responding components did not comply with the statutory time limits imposed by the FOIA and failed to timely respond to the HCRC Request. Prior to the initiation of this lawsuit, Defendants disclosed only five pages of responsive material.

35. Plaintiff timely appealed Defendants' responses to its request, seeking adequate and complete searches to locate additional responsive material. All administrative appeals have been exhausted.

36. Disclosures made pursuant to this litigation have revealed the role of the Criminal Division as one of the primary influences in the development of the regulations, as well as Defendants' efforts to conceal that fact from the public. Disclosures also demonstrate that individual members of the working group to develop the regulations, including Margaret Griffey, Richard Broughton, and Jennifer Goldstein, had conflicts of interests and significant bias in developing the regulations. These conflicts included statements of prejudgment on certification issues, personal and substantial participation in prior litigation regarding state compliance with Chapter 154 on behalf of

potential parties to certification proceedings and personal and substantial participation in state capital habeas cases that will be affected by certification determinations.

37. Disclosures also establish that Defendants' consultation with defense interests involved one meeting with three individuals representing a single national defense organization, and that other than a consultation with the American Bar Association, all other consultations, including those Defendants' identified as consultations with representatives of state officials, were with state prosecutors and prosecution organizations.

38. Following the publication of the Proposed Regulations, Defendants had unlawful ex parte communications with interested prosecutors, including at least a meeting with the National Association of Attorneys General and a conversation with officials from the Nevada Attorney General's Office to discuss the proposed regulations. Indeed, Defendants cite comments that never were made public as justifications for some of the changes to the Final Rule that favor prosecution interests.

39. Throughout the promulgation of the regulations, Defendants were under pressure from Senator Kyl of Arizona and Representative Lungren of California to issue final regulations that would allow their states to become certified under Chapter 154.

**Plaintiff's Interest in the Attorney General's Regulations**

40. The Regulations will determine the procedures and standards by which the Attorney General certifies states for expedited review of state death penalty convictions and sentences in federal habeas corpus proceedings. The provisions of Chapter 154 require qualifying state mechanisms for the appointment and compensation of state post-conviction counsel in death penalty cases to assure timely appointment of competent counsel, adequate compensation, and reasonable expenses for the development and presentation of all potentially meritorious claims of constitutional error in state court proceedings. A certification determination based on biased, incomplete, and/or inaccurate information that erroneously portrays state compliance when it does not exist fundamentally undermines the goals and purposes of Chapter 154 and violates existing judicial rules regarding its provisions and legislative history.

11

41. Such errors during certification ultimately deprive indigent capital habeas corpus petitioners of their rights under the Due Process and Equal Protection clauses of the United States Constitution, and to appropriate federal judicial review of their capital convictions and death sentences.

42. Plaintiff has a significant interest in the Final Rule. In keeping with this interest, Plaintiff participated in the public comment period for the Proposed Regulations and submitted timely comments to Defendants in order to raise substantial concerns with the Regulations as proposed.

43. Plaintiff's comments to the Proposed Regulations advised Defendants that DOJ's failure to disclose information sought by the HCRC Request deprived Plaintiff of adequate notice and opportunity to participate in the public comment period and violated due process requirements for agency decision making. Plaintiff's comments also asked the Attorney General to avoid these unlawful results either by withdrawing the Proposed Regulations or extending the public comment period until the DOJ disclosed information sought by the HCRC Request.

44. Specifically, Plaintiff addressed in its comments to Defendants the following issues related to the Proposed Regulations and public comment period:

    A. Interested members of the public are entitled to a meaningful opportunity to communicate relevant information, concerns, and criticisms during the public comment period;

    B. Sufficient notice of issues to be addressed during the rulemaking is necessary to meaningful participation in the public comment period;

    C. Sufficient notice includes information about the Attorney General's methodology in developing proposed regulations and the reasoning that led to the proposed rule;

    D. Sufficient notice includes public disclosure of the information upon which the Attorney General relied in reaching the decisions to propose particular rules;

    E. Interested members of the public are entitled to evaluate whether there is a rational connection between the proposed regulations and the statutory scheme and whether the proposed regulations offer a logical means of implementing that scheme;

12

F. The particular relevance of requested information to adequate notice and informed participation in the public comment period given the unavoidable conflicts of interests inherent in the Attorney General certifying states' mechanisms while also acting as the chief prosecutor for the United States; and

G. The particular relevance of requested information to adequate notice and informed participation in the public comment period given the evidence of undisclosed ex parte consultations before and after the publication of the proposed Regulations between interested state prosecutors and the Attorney General responsible for developing the proposed Regulations.

45. Defendants declined to take action to remedy the issues raised by DOJ's failure to disclose information sought by the HCRC Request as described in Plaintiff's comments.

**Defendants' Final Rule**

46. In rejecting the numerous comments that raised the need for the Attorney General's regulations to contain minimum standards and definitions for certification requirements, Defendants stated that amendments to Chapter 154 were intended to (1) invalidate federal court interpretations of the statutory terms and requirements of Chapter 154, including those unchanged by the Patriot Act amendments, and (2) leave specification of any standards and definitions of Chapter 154 requirements to the discretion of individual states.

47. In publishing the Final Rule, Defendants did not respond to the comments that presented the constitutional violations that result should Defendants disregard the conclusive effect of the judgments of Article III courts. Defendants also ignored comments that their refusal to define key statutory terms rendered the regulations impermissibly vague and standardless and failed to comply with the statutory directive to implement certification procedures. Although many comments pointed out that the examples in the Proposed Regulation demonstrated prejudgment of state certification, Defendants did not respond to these comments, or those that raised additional conflicting interests created by Defendants' joint projects and legal relationships with state prosecutors in dozens of capital cases.

48. Defendants justified their interpretations of the Patriot Act amendments by reference to

13

two sources: a provision that the requirements of certification are those "expressly stated" in Chapter 154, and the views of two Arizona legislators, Senator Kyl and Representative Flake, on certification. This approach is contrary to the authoritative and relevant legislative history and controlling judicial interpretations of Chapter 154 and raises serious constitutional and other legal problems with the Final Rule.

49. In response to the many comments raising serious deficiencies in procedural protections and regularity in the certification proceedings, Defendants claimed that the certification determination was not a regulatory action governed by rule making procedures, but an adjudication akin to licensing with no interpretation of law or policy or impact on future conduct. Defendants also eliminated in the Final Rule a previous requirement that certification may not apply when a state mechanism changes in a manner that affects its compliance with Chapter 154.

50. Defendants did not respond to comments regarding a number of specific procedural necessities in certification proceedings, such as the need for interested parties to submit information to the Attorney General under seal during the certification proceeding. Defendants also ignored comments regarding the intertwined issues of interested persons needing sufficient time for comment on certification and the regulation's deficient notice of a state application to death-sentenced inmates. Although in many states the constitutional and/or statutory duties of the state Attorney General do not authorize that official to seek Chapter 154 certification on behalf of the state, Defendants did not respond to comments that raised the preemption of such state laws by the Attorney General's designation of the state Attorney General as the appropriate state official to apply for certification.

51. Had Defendants complied with their obligations to provide adequate notice and opportunity to comment on their development of the Proposed Regulations and the Final Rule and their legal positions provided in the first instances in the publication of the Final Rule, Plaintiff would have submitted substantial comments addressing the inappropriate and unlawful positions taken by Defendants.

52. Given Defendants' disregard for the required constitutional protections and goals of Chapter 154, the Final Rule is nearly certain to allow certification of states that do not provide competent counsel and adequate resources for postconviction representation. Moreover, Defendant's

14

unduly limiting interpretation of Chapter 154's requirements undoubtedly will result in states frivolously submitting certification applications in hopes of qualifying for Chapter 154, or at least forcing death-sentenced inmates to comply with Chapter 154's provisions for fear that the Attorney General of the United States will incorrectly certify non-qualifying state mechanisms. The threat of this improper certification combined with its retroactive reach renders the effect of the Final Rule on Plaintiff, its clients, and the public interest, particularly grave. Given the economic crisis that grips California and many other states, the degree of proactive litigation necessary to protect the rights of death-sentenced individuals from the unlawful application of Chapter 154 under the Attorney General's Final Rule will substantially tax the resources not only of Plaintiff, but also of the state and federal courts that will handle the litigation and face significant legal uncertainty, including questions about the management of their caseloads and dockets. Plaintiff also will be forced to make decisions about protecting its clients during this period of legal chaos at the risk of foregoing full development and presentation of constitutional claims of error to which those clients are entitled, and on which their lives depend.

53. Plaintiff therefore seeks invalidation of the Final Rule due to bias in the development of the regulations, Defendants' failure to provide notice and allow for public comment on numerous critical issues central to the flawed rule making, and Defendants' failure to state rational bases for the Final Rule by responding to significant public comments about its unconstitutional and unlawful interpretation of Chapter 154, among other problems. Plaintiff also seeks the information to which it is entitled under the FOIA, and that is required for Plaintiff's meaningful evaluation of Defendants' Final Rule and subsequent phases of its development and implementation.

54. Defendants' refusal to disclose records responsive to the HCRC Request, address Plaintiff's administrative appeals, remedy obstacles to Plaintiff's participation in Defendants' rule making, provide sufficient public notice and comment, and eliminate the effects of bias in the rule making and certification determinations is unlawful.

unduly limiting interpretation of Chapter 154's requirements undoubtedly will result in states frivolously submitting certification applications in hopes of qualifying for Chapter 154, or at least forcing death-sentenced inmates to comply with Chapter 154's provisions for fear that the Attorney General of the United States will incorrectly certify non-qualifying state mechanisms. The threat of this improper certification combined with its retroactive reach renders the effect of the Final Rule on Plaintiff, its clients, and the public interest, particularly grave. Given the economic crisis that grips California and many other states, the degree of proactive litigation necessary to protect the rights of death-sentenced individuals from the unlawful application of Chapter 154 under the Attorney General's Final Rule will substantially tax the resources not only of Plaintiff, but also of the state and federal courts that will handle the litigation and face significant legal uncertainty, including questions about the management of their caseloads and dockets. Plaintiff also will be forced to make decisions about protecting its clients during this period of legal chaos at the risk of foregoing full development and presentation of constitutional claims of error to which those clients are entitled, and on which their lives depend.

53. Plaintiff therefore seeks invalidation of the Final Rule due to bias in the development of the regulations, Defendants' failure to provide notice and allow for public comment on numerous critical issues central to the flawed rule making, and Defendants' failure to state rational bases for the Final Rule by responding to significant public comments about its unconstitutional and unlawful interpretation of Chapter 154, among other problems. Plaintiff also seeks the information to which it is entitled under the FOIA, and that is required for Plaintiff's meaningful evaluation of Defendants' Final Rule and subsequent phases of its development and implementation.

54. Defendants' refusal to disclose records responsive to the HCRC Request, address Plaintiff's administrative appeals, remedy obstacles to Plaintiff's participation in Defendants' rule making, provide sufficient public notice and comment, and eliminate the effects of bias in the rule making and certification determinations is unlawful.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### Violation of the Freedom of Information Act for Failure to Make Responsive Records Available

55. Plaintiff repeats and realleges paragraphs 1-54.

56. Defendants' failure to disclose records responsive to Plaintiff's request violates the FOIA, 5 U.S.C. section 552(a)(3).

### SECOND CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Make Responsive Records Available

57. Plaintiff repeats and realleges paragraphs 1-54.

58. Defendants' failure to disclose records responsive to Plaintiff's request constitutes agency action unlawfully withheld and is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law in violation of the Administrative Procedure Act.

### THIRD CAUSE OF ACTION:
### Violation of the Freedom of Information Act for Failure to Make A Reasonable Effort to Search for Records Responsive to Plaintiff's Request

59. Plaintiff repeats and realleges paragraphs 1-54.

60. Defendants' failure to make a reasonable effort to search for records responsive to the HCRC Request violates the FOIA, 5 U.S.C. section 552(a)(3).

### FOURTH CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Make A Reasonable Effort to Search for Records Responsive to Plaintiff's Request

61. Plaintiff repeats and realleges paragraphs 1-54.

62. Defendants' failure to make a reasonable effort to search for records responsive to the HCRC Request constitutes agency action unlawfully withheld and unreasonably delayed and is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law in violation of the APA.

## FIFTH CAUSE OF ACTION:
### Violation of the Freedom of Information Act for Failure to Timely Respond to Plaintiff's Appeals

63. Plaintiff repeats and realleges paragraphs 1-54.

64. Defendants' failure to timely respond to Plaintiff's appeals of agency responses violates the FOIA, 5 U.S.C. section 552(a)(6)(A)(ii).

## SIXTH CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Timely Respond to Plaintiff's Appeals

65. Plaintiff repeats and realleges paragraphs 1-54.

66. Defendants' failure to timely respond to Plaintiff's appeals of agency responses constitutes agency action unlawfully withheld and unreasonably delayed and is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law in violation of the APA.

## SEVENTH CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Provide Adequate Notice and Opportunity to Participate in Defendants' Rulemaking

67. Plaintiff repeats and realleges paragraphs 1-54.

68. Defendants' actions violated the Administrative Procedure Act, 5 U.S.C. section 553, by failing to provide the required notice and comment. Defendants prevented Plaintiff's meaningful participation in the rule making by failing to disclose public information requested by Plaintiff, give notice of important and controversial information central to the development of the regulations, and provide notice of and comment on significant changes to the Final Rule that were not apparent from the proposed rule. These actions and omissions unlawfully deprived Plaintiff and the public of sufficient notice of and ability to participate meaningfully in Defendants' rulemaking and are arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law, in violation of the APA.

## EIGHTH CAUSE OF ACTION:
### Violation of the Due Process Clause of the United States Constitution for Failure to Provide Adequate Notice and Opportunity to Participate in Defendants' Rulemaking

69. Plaintiff repeats and realleges paragraphs 1-54.

70. Defendants' actions violated the Due Process clause of the United States Constitution by failing to provide sufficient notice and opportunity to present objections to their rule making. Defendants failed to disclose public information requested by Plaintiff, give notice of important and controversial information central to the development of the regulations, and provide notice of and ability to object to significant changes to the Final Rule that were not apparent from the proposed rule. These actions and omissions unlawfully deprived Plaintiff and the public of sufficient notice of and ability to participate meaningfully in Defendants' rulemaking in violation of Due Process.

### NINTH CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to State Defendants' Bases and Justification for the Regulations by Responding to Significant Public Comments

71. Plaintiff repeats and realleges paragraphs 1-54.

72. Defendants' failure to respond to many public comments raising serious constitutional and other problems with the proposed regulations violates the APA, 5 U.S.C. section 553(c), and constitutes arbitrary and capricious agency action.

### TENTH CAUSE OF ACTION:
### Violation of the Due Process and Equal Protection Clauses of the United States Constitution for Bias in the Development of Defendants' Regulations

73. Plaintiff repeats and realleges paragraphs 1-54.

74. Defendants' bias in the development of regulations violates the Due Process and Equal Protection Clauses in the Fifth and Fourteenth amendments to the United States Constitution and renders Defendants' actions in promulgating the Final Rule contrary to constitutional rights and privileges in violation of the APA, 5 U.S.C. § 706 (2)(B).

### REQUESTED RELIEF

Wherefore, Plaintiff prays that this Court:

1. Hold unlawful and set aside Defendants' Certification Process for State Capital Counsel Systems, Final Rule, 73 Fed. Reg. 75,327 (Dec. 11, 2008), for failing to comply with the requirements of the Administrative Procedure Act, 5 U.S.C. sections 551-59, 701-06 and/or the Due Process and Equal Protection clauses of the United States Constitution as alleged in Causes of Action

Seven through Ten. There exists an actual, present and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' actions described in those causes of action. Furthermore, this controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate. 28 U.S.C. §§ 2201, 2202.

2. In the alternative, enjoin the effective date of the Final Rule until review of the lawfulness of Defendants' actions is completed, 5 U.S.C. § 705;

3. Enjoin further action on a Final Rule for the Certification Process for State Capital Counsel Systems until Defendants have disclosed the material sought by Plaintiff, allowed a reasonable time for public comment on newly disclosed issues, and considered and addressed those comments, 5 U.S.C. § 705;

4. Order Defendants immediately to complete thorough searches in all relevant components for the requested records and expeditiously to process all responsive records, 5 U.S.C. § 552(4)(B);

5. Order Defendants to disclose all responsive records in their entirety, 5 U.S.C. § 552(4)(B);

6. Enjoin Defendants from charging Plaintiff fees for the processing of the HCRC Request, 5 U.S.C. § 552(4)(A)(iii);

7. Award Plaintiff its costs and reasonable attorney's fees incurred in this action, 5 U.S.C. § 552(4)(E); and

8. Grant such other relief as the Court may deem just and proper.

DATED: December 23, 2008          Respectfully submitted,

                               By:   /s/ Michael Laurence

                                    MICHAEL LAURENCE
                                    Habeas Corpus Resource Center
                                    Attorneys for Plaintiff

FIRST AMENDED COMPLAINT
*HCRC V. US DOJ*, NO. 08-02649-CW