1  GREGORY G. KATSAS
   Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   United States Attorney
3  JOHN R. TYLER
   Assistant Branch Director
4  JOEL McELVAIN, State Bar No. 257736
   Attorney
5  U.S. Department of Justice
   Civil Division, Federal Programs Branch
6  450 Golden Gate Ave., Room 7-5395
   San Francisco, CA 94102
7  Telephone:   (415) 436-6645
   Fax:         (415) 436-6632
8  Email:       Joel.McElvain@usdoj.gov

9  Attorneys for Defendants

10              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                     (OAKLAND DIVISION)

12  **HABEAS CORPUS RESOURCE CENTER**,        )
                                              )
13                          Plaintiff,        )
                                              )   Case No. C 08-02649 CW
14              v.                            )
                                              )   **Notice of Motion, and Motion to**
15  **UNITED STATES DEPARTMENT OF**           )   **Dismiss the Amended Complaint**
    **JUSTICE** and **MICHAEL B. MUKASEY**,   )   **in Part**
16  in his official capacity as Attorney General of )
    the United States,                       )   Date:  February 12, 2009
17                                            )   Time:  2:00 p.m.
                                              )   Place: Courtroom 2, Oakland
18                          Defendants.        )
                                              )
19

20

21

22

23

24

25

26

27

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

# TABLE OF CONTENTS

**Page**

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      This Court Lacks Article III Jurisdiction over the New Claims . . . . . . . . . . . . . . . 5

      A.      HCRC Lacks Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.      The Newly-Raised Claims Are Not Ripe  . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     The Newly-Raised Counts Fail to State a Claim  . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.      The Attorney General Was Not Obligated to Follow
           Notice and Comment Procedures to Issue the Regulation . . . . . . . . . . . . 11

      B.      The Final Regulation Was a Logical Outgrowth of the
           Proposed Rule  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.      The Attorney General Provided a Reasoned Explanation
           for the Regulation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      **D**.     The Regulation Was Not Tainted by Ex Parte
           Communications  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      E.      The Attorney General Was Not Impermissively Biased in
           His Promulgation of the Regulation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1

## **TABLE OF AUTHORITIES**

2

<u>**Cases:**</u>                                                                                                      <u>**Page**</u>

3    *Abbott Labs. v. Gardner,*
        387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
4    *Action for Children's Television v. FCC,*
        564 F.2d 458 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
5    *Alaska v. Fed. Subsistence Bd.,*
        544 F.3d 1089 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
6    *Alaska Factory Trawler Ass'n v. Baldridge,*
        831 F.2d 1456 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
7    *Ass'n of Am. Med. Colleges v. United States,*
        217 F.3d 770 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
8    *Ass'n of Nat'l Advertisers v. FTC,*
        627 F.2d 1151 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
9    *Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
        239 U.S. 441 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10   *Bowen v. Georgetown Univ. Hosp.,*
        488 U.S. 204 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
11   *Chief Probation Officers v. Shalala,*
        118 F.3d 1327 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
12   *Citizens for Clean Air v. EPA,*
        959 F.2d 839 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
13   *City of Los Angeles v. Lyons,*
        461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
14   *Coalition of Clergy, Lawyers & Professors v. Bush,*
        310 F.3d 1153 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
15   *Cole v. Oroville Union High Sch. Dist.,*
        228 F.3d 1092 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
16   *Conn v. Gabbert,*
        526 U.S. 286 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
17   *Dixon v. Wallowa County,*
        336 F.3d 1013 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
18   *Ecology Ctr. v. Castaneda,*
        426 F.3d 1144 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
19   *Envt'l Defense Ctr. v. EPA,*
        344 F.3d 832 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
20   *Erringer v. Thompson,*
        371 F.3d 625 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
21   *Halverson v. Skagit County,*
        42 F.3d 1257 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
22   *Home Box Office v. FCC,*
        567 F.2d 9 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
23   *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.,*
        408 F.3d 638 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
24   *Kennecott Utah Copper Corp. v. Dep't of Interior,*
        88 F.3d 1191 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
25   *Kowalski v. Tesmer,*
        543 U.S. 125 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
26   *Long Island Care at Home, Ltd. v. Coke,*
        127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

27

28

-ii-

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

**Cases (continued):**                                                    **Page**

*Louis v. Dep't of Labor*,
    419 F.3d 970 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 891 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Municipality of Anchorage v. United States*,
    980 F.2d 1320 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
    127 S. Ct. 2518 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*NRDC v. Abraham*,
    388 F.3d 701 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nuclear Info. & Resource Serv. v. NRC*,
    509 F.3d 562 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Parravanno v. Babbitt*,
    837 F. Supp. 1034 (N.D. Cal. 1993), *aff'd*, 70 F.3d 539 (9th Cir. 1995) . . . . . . . 21

*Portland Audubon Soc'y v. Endangered Species Cmte.*,
    984 F.2d 1534 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Premo v. Martin*,
    119 F.3d 764 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pub. Utility Comm'r of Or. v. Bonneville Power Admin.*,
    767 F.2d 622 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Robertson v. Seattle Audubon Soc'y*,
    503 U.S. 429 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*S. Cal. Edison Co. v. FERC*,
    770 F.2d 779 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Safari Aviation, Inc. v. Garvey*,
    300 F.3d 1144 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Salmon Spawning Recovery Alliance v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Scott v. Pasadena Unified Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sierra Club v. Costle*,
    657 F.2d 298 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Small Refiner Lead Phase-Down Task Force v. EPA*,
    705 F.2d 506 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Toilet Goods Ass'n v. Garner*,
    387 U.S. 158 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Florida E. Coast Ry. Co.*,
    410 U.S. 224 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*United States v. Morgan*,
    313 U.S. 409 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

-iii-

**Cases (continued):**                                                                    **Page**

*Vermont Yankee Nuclear Power Corp. v. NRDC,*
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23
*Walker v. City of Lakewood,*
    272 F.3d 1114 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Warth v. Seldin,*
    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes:**

5 U.S.C. § 553(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
28 U.S.C. § 2261(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
28 U.S.C. § 2261(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
28 U.S.C. § 2265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
28 U.S.C. § 2265(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
28 U.S.C. § 2265(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12
28 U.S.C. § 2265(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11
Pub. L. No. 109-177, § 507, 120 Stat. 192, 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Regulations:**

28 C.F.R. § 26.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
28 C.F.R. § 26.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
28 C.F.R. § 26.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16
28 C.F.R. § 26.23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28 C.F.R. § 26.23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28 C.F.R. § 26.23(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28 C.F.R. § 26.23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Miscellaneous:**

141 Cong. Rec. E2639 (daily ed. Dec. 22, 2005) (statement of Rep. Flake) . . . . . . . . . . 15
152 Cong. Rec. S1620 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl) . . . . . . . . . . . 15
72 Fed. Reg. 31,217 (June 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16, 21
72 Fed. Reg. 44,816 (Aug. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16
73 Fed. Reg. 75,327 (Dec. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
1 Richard Pierce, Administrative Law Treatise § 7.6 (4th ed. 2002) . . . . . . . . . . . . . . . 21

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

-iv-

1    GREGORY G. KATSAS
     Assistant Attorney General
2    JOSEPH P. RUSSONIELLO
     United States Attorney
3    JOHN R. TYLER
     Assistant Branch Director
4    JOEL McELVAIN, State Bar No. 257736
     Attorney
5    U.S. Department of Justice
     Civil Division, Federal Programs Branch
6    450 Golden Gate Ave., Room 7-5395
     San Francisco, CA 94102
7    Telephone:   (415) 436-6645
     Fax:         (415) 436-6632
8    Email:       Joel.McElvain@usdoj.gov

9    Attorneys for Defendants

10                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                          (OAKLAND DIVISION)

12   **HABEAS CORPUS RESOURCE CENTER**,          )
                                                 )
13                          Plaintiff,           )
                                                 )    Case No. C 08-02649 CW
14              v.                               )
                                                 )    **Notice of Motion, and Motion to**
15   **UNITED STATES DEPARTMENT OF**             )    **Dismiss the Amended Complaint**
     **JUSTICE** and **MICHAEL B. MUKASEY**,     )    **in Part**
16   in his official capacity as Attorney General of )
     the United States,                          )    Date:  February 12, 2009
17                                               )    Time:  2:00 p.m.
                            Defendants.          )    Place: Courtroom 2, Oakland
18                                               )
                                                 )
19

20          NOTICE is hereby given of the filing of this motion pursuant to Rules 12(b)(1)

21   and 12(b)(6) of the Federal Rules of Civil Procedure by the Defendants, the United States

22   Department of Justice ("DOJ") and Michael B. Mukasey, in his official capacity as

23   Attorney General of the United States.  The Defendants respectfully request that the Court

24   dismiss the amended complaint of the Plaintiff, Habeas Corpus Resource Center

25   ("HCRC"), in part.[1]  The amended complaint raises four new counts, Counts Seven

26

27   _____
        [1]  The Plaintiff did not comply with Federal Rule of Civil Procedure 15 by seeking
28   either a stipulation or leave of Court before submitting the amended complaint.

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

through Ten.  Those counts raise several challenges to a regulation recently promulgated by the Attorney General.  (Counts One through Six restate claims that HCRC has raised regarding a Freedom of Information Act request; those counts are not the subject of this motion.)  As will be explained below, this Court lacks jurisdiction over the newly-raised counts, for two reasons.  HCRC lacks standing to bring these claims, as it cannot demonstrate that it directly suffers any harm that would be remedied by the relief that it seeks.  Moreover, these claims are not ripe, as the regulation does not itself create any legal rights or obligations, but instead merely establishes a procedure for later adjudicatory proceedings.

Apart from these jurisdictional hurdles, HCRC's newly-asserted counts fail to state a claim.  HCRC asserts that the Attorney General failed to provide adequate notice and opportunity for comment before issuing the regulation by: (1) failing to provide notice of explanatory language in the preamble to the final rule; (2) failing to respond adequately to certain comments; (3) failing to provide notice of allegedly improper ex parte communications; and (4) failing to disclose his bias in the formulation of the regulation.  None of these assertions states a valid claim under the Administrative Procedure Act ("APA"), however; the Defendants instead complied with all applicable requirements under the APA.  Because HCRC's claims fail as a matter of law, the amended complaint should be dismissed in part.

**Background**

Under chapter 154 of title 28 of the United States Code, Congress offers procedural benefits in federal habeas corpus proceedings for states that exceed the minimum constitutional requirements by providing counsel to capital defendants, not only at trial and on appeal, but also in state postconviction proceedings.  In the decade following the original enactment of chapter 154 in 1996, Congress became concerned that some courts had been overly restrictive in interpreting and applying the requirements that a state must meet to qualify for these procedural benefits.  Accordingly, in 2006, it

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1   enacted a statute that: (1) modified these requirements, and precluded the addition of any

2   requirements beyond those expressly stated in the chapter; and (2) changed the

3   procedures under which a state would be determined to qualify.  USA Patriot

4   Improvement and Reauthorization Act, Pub. L. No. 109-177, § 507(a)-(c), 120 Stat. 192,

5   250 (2006).

6       As amended by the Act, 28 U.S.C. § 2265(a) assigns to the Attorney General the

7   responsibility to certify, upon request by an appropriate state official, "whether the State

8   has established a mechanism for the appointment, compensation, and payment of

9   reasonable litigation expenses of competent counsel in State postconviction proceedings

10  brought by indigent prisoners who have been sentenced to death," 28 U.S.C.

11  § 2265(a)(1)(A), the date on which that mechanism was established, 28 U.S.C.

12  § 2265(a)(1)(B), and "whether the State provides standards of competency for the

13  appointment of counsel" in those state postconviction proceedings, 28 U.S.C.

14  § 2265(a)(1)(C).  The statute makes clear that there are no requirements for the

15  certification of a state "other than those expressly stated in" chapter 154.  28 U.S.C.

16  § 2265(a)(3).

17      The statute specifies that "[t]he determination of the Attorney General regarding

18  whether to certify a State under [Section 2265] is subject to review exclusively as

19  provided under chapter 158" of title 28, that is, through a petition for review in the court

20  of appeals under the Hobbs Act.  28 U.S.C. § 2265(c)(1).  The District of Columbia

21  Circuit has exclusive jurisdiction over that review, and it engages in that review *de novo*.

22  28 U.S.C. § 2265(c)(2), (c)(3).  The statute also directs the Attorney General to

23  promulgate regulations to implement the procedure for state certification.  28 U.S.C.

24  § 2265(b).

25      Pursuant to that mandate, the Attorney General published a notice of proposed

26  rulemaking in 2007 that described a set of proposed regulations that would establish the

27

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

certification procedure.  72 Fed. Reg. 31,217 (June 6, 2007).  DOJ subsequently reopened

the comment period for the proposed rule.  72 Fed. Reg. 44,816 (Aug. 9, 2007).

The Attorney General issued a final rule on December 11, 2008.  73 Fed. Reg.

75,327 (Dec. 11, 2008).  The regulation establishes the procedures for a state to follow if

it wishes to be certified as compliant with the requirements of chapter 154 of title 28 of

the United States Code.  Under the rule, the appropriate state official – ordinarily, the

state's attorney general – may apply for certification with the Attorney General.  28

C.F.R. § 26.23(a); *see* 28 U.S.C. § 2265(a).  Upon receipt of the application, the Attorney

General will publish a notice in the Federal Register that solicits public comment on the

application.  28 C.F.R. § 26.23(c).  The Attorney General will publish his determination

with respect to the state's application only after a review is completed of the submitted

comments.  28 C.F.R. § 26.23(d).  As discussed above, the D.C. Circuit has "exclusive

jurisdiction" to review the Attorney General's certification decision under this procedure,

and its review is *de novo*.  28 U.S.C. § 2265(c).

The regulation becomes effective on January 12, 2009.  73 Fed. Reg. at 75,327.

After that date, an appropriate state official may initiate the certification process by

submitting an application.  No state will be certified as meeting the requirements of

chapter 154 in the absence of a request from the appropriate state official for

certification.[2]

HCRC is an agency of the State of California that provides legal representation to

indigent defendants in state and federal postconviction proceedings in California.  (Am.

Compl., ¶ 17.)  HCRC does not allege that the Attorney General of California will request

---

[2]  In its motion to shorten time (Doc. 52 at 3), HCRC surmises that the Attorney
General deliberately timed the issuance of the regulation in order to empower himself to
certify states before the end of the current administration on January 20.  This speculation
is baseless.  As noted above, no state will be certified in advance of a request from the
state, publication in the Federal Register, the solicitation of comments, and a review of
the application and comments.  No state will be certified on or before January 20, 2009.

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1   that the state be certified under chapter 154.  (Am. Compl., ¶ 15 n. 2; *see also* Mot for.

2   Prelim. Inj. at 28 (HCRC can only "hazard a guess" as to whether California will apply).)

3   HCRC alleges that it faces a harm from the issuance of the final rule because California

4   might apply for, and be granted, certification pending adjudication of HCRC's claims in

5   this case, thereby allegedly causing HCRC uncertainty about the management of its

6   docket of capital cases.  (*See* Am. Compl., ¶ 52; Mot. at 28-29.)  It further alleges that it

7   will be forced to engage in "proactive litigation" if California is improperly certified.

8   (Am. Compl., ¶ 52.)  In its amended complaint, the Plaintiff raises four counts (Counts

9   Seven through Ten) asserting claims that the final rule is invalid.

**Argument**

10

11  **I.     This Court Lacks Article III Jurisdiction over the New Claims**

12          **A.     HCRC Lacks Standing**

13          HCRC faces a fundamental jurisdictional barrier to its claims; it cannot

14  demonstrate that it has standing to bring them.  "'The plaintiff has the burden to establish

15  the three elements of Article III standing: (1) he or she has suffered an injury in fact that

16  is concrete and particularized, and actual and imminent; (2) the injury is fairly traceable

17  to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court

18  decision.'"  *Salmon Spawning Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th

19  Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  HCRC

20  does not, and cannot, show that it has directly suffered a concrete and particularized

21  harm, or that any such harm is fairly traceable to the Defendants' conduct and would be

22  redressed by the relief that it seeks.

23          HCRC does not allege that it would directly suffer any concrete harm from the

24  issuance of the final rule, and instead raises only speculative assertions of a future injury.

25  Its allegations do not suffice to demonstrate its standing.  "Article III standing requires an

26  injury that is 'actual or imminent, not conjectural or hypothetical.'"  *Cole v. Oroville*

27  *Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000) (quoting *Whitmore v.*

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

*Arkansas*, 495 U.S. 149, 155 (1990)).  "A plaintiff may allege a future injury in order to comply with this [injury-in-fact] requirement, but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct and the injury or the threat of injury is both real and immediate, not conjectural or hypothetical.'"  *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis in original). An allegation of an injury that turns on "speculative contingencies" cannot satisfy the Article III requirement of an injury in fact.  *See Cole*, 228 F.3d at 1100.

HCRC does not, and cannot allege, that it faces an immediate danger of a direct injury.  It instead asserts generally that, as an agency employing attorneys who represent capital defendants, its management of its docket would be affected if it were required to respond to the legal uncertainty arising from the possibility that the State of California were to seek, and be granted, certification under chapter 154.  (Am. Compl., ¶ 52.)  It further asserts that, if California were to be certified, it would seek to litigate matters relating to that certification.  (Am. Compl., ¶ 52.)  But these asserted injuries would arise only if California were to apply for certification, and if that request were to be granted. As HCRC forthrightly concedes, it cannot affirmatively allege that California will so apply, and instead can only "hazard a guess" that the State might do so.  (Mot. at 28.) Such a guess does not suffice to meet HCRC's burden to establish its standing.  HCRC also refers to two exhibits in an attempt to show that the Attorney General of California likely will apply for certification.  (*Id.*)  Both of these documents, however, were created in 2006.  As they predate the current Attorney General's tenure, they say nothing at all about his intentions.  (Doc. 57, Exs. H, I.)  Absent a request from the state Attorney General for certification, and absent a granting of that request by the Attorney General of the United States, HCRC suffers no concrete harm that is actual or imminent, and thus it lacks standing.

- 6 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

Even if the contingencies upon which HCRC's allegations depend were to come to pass, HCRC would not itself suffer a direct injury that meets the requirements of standing for Article III.  As noted above, HCRC claims that its uncertainty as to the state of the law would require it to litigate capital cases differently, if the State of California were to be certified.  But an attorney's interest in the legal standards for the field of law in which he or she operates simply is not the sort of interest that could establish Article III standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 131-32 (2004); *see also Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999).  Indeed, if an attorney could show standing simply by alleging that he or she would litigate cases differently if uncertainty on a legal issue were to be resolved, the requirement of an actual case or controversy under Article III would be rendered practically meaningless.  *See Kowalski*, 543 U.S. at 134.  Nor can HCRC demonstrate that it has standing simply by alleging that it will engage in litigation to challenge the possible certification of California as compliant with chapter 154.  "The pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III."  *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n. 3 (9th Cir. 2001) (internal quotation omitted).

HCRC does not specifically so claim, but perhaps means to argue that it has standing not on its own behalf, but instead to represent its clients' interest in ensuring that the State of California is not certified under chapter 154.  However, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  In narrow circumstances, a litigant may have standing to bring a claim on behalf of a third party.  To be able to do so, the litigant must satisfy three requirements:  "The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests."  *Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153,

- 7 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1163 (9th Cir. 2002) (internal quotation omitted).  HCRC cannot satisfy the first

requirement; as discussed above, it alleges only a speculative future harm, and that

allegation does not establish an injury in fact.  (For the same reason, HCRC's allegations

would not suffice to show that its clients face an imminent danger of a direct injury.  Any

effect of the regulation upon HCRC's clients would occur only if California were to apply

for certification, and if that application were to be granted.)  Moreover, HCRC does not

attempt to show that it meets the remaining two requirements, that it has a close

relationship with a third party with standing, or that the third party is hindered in

protecting his or her own interests. *Cf. Kowalski*, 543 U.S. at 132-33 (represented clients

not hindered in protecting their interests).  Thus, because HCRC fails to show that it has

suffered an injury in fact, it lacks standing, and that defect may not be avoided by

recasting its claims as those of a third party.

In addition, neither the harm that HCRC alleges that it will suffer, nor any harm

that it alleges that its clients would suffer, is fairly traceable to the certification regulation,

and no such harm would be redressed if the regulation were to be invalidated.  As

discussed above, HCRC claims that it would suffer from legal uncertainty regarding

whether the procedures of chapter 154 will apply to federal habeas cases arising from

California.  (Mot. at 28.)  That uncertainty will remain, however, regardless of whether

the regulation is invalidated.  A successful challenge to the rulemaking would only

prolong HCRC's uncertainty, not resolve it, as the possibility will remain that California

could successfully apply for certification at a future date.  Because the harms of which the

Plaintiff complains would remain whether or not it gains the relief that it seeks here, it

lacks Article III standing.  "Relief that does not remedy the injury suffered cannot

bootstrap a party into federal court; that is the very essence of the redressability

requirement." *Dixon v. Wallowa County*, 336 F.3d 1013, 1021 (9th Cir. 2003) (internal

quotation omitted).

- 8 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1

### B. The Newly-Raised Claims Are Not Ripe

2 There is a second jurisdictional defect in HCRC's claims. The regulation that it

3 challenges does not itself establish any legal rights or obligations, but instead only sets

4 forth a procedure by which later state requests for certification will be adjudicated.

5 Accordingly, HCRC's challenge to the rulemaking is not ripe, and will not be ripe until

6 the scope of any dispute between the parties becomes concrete in a particular certification

7 decision.

8 "The ripeness doctrine is drawn both from Article III limitations on judicial power,

9 and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality*

10 *Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The doctrine serves "to prevent the

11 courts, through avoidance of premature adjudication, from entangling themselves in

12 abstract disagreements over administrative policies, and also to protect agencies from

13 judicial interference until an administrative decision has been formalized and its effects

14 felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S.

15 136, 148-49 (1967). The determination of whether an administrative action is ripe for

16 review requires an evaluation, first, of the fitness of the issues for judicial decision, and,

17 second, of the hardship to the parties of withholding court consideration. *Nat'l Park*

18 *Hospitality Ass'n*, 538 U.S. at 808. HCRC's challenges to the regulation satisfy neither

19 requirement.

20 First, the issues are not fit for judicial decision at this time. HCRC disputes the

21 Attorney General's statement of his interpretation of the statutory requirements for

22 certification. But no concrete consequences would flow from that statement until the

23 Attorney General applies his understanding of the statutory requirements to an actual

24 certification request. By deferring a judicial decision until such a concrete application is

25 made, the court will avoid deciding merely an abstract disagreement over the law.

26 "Absent a statutory provision providing for immediate judicial review, a
   regulation is not ordinarily considered the type of agency action 'ripe' for
27 judicial review under the [APA] until the scope of the controversy has been

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint
- 9 -

reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms him or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately . . . .)."

*Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).  In order to fit in this exception, and to present an issue ripe for judicial decision in advance of any concrete application of its terms, a regulation must affect "primary conduct"; that is, it must create a substantive legal right or obligation. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 810 (citing *Toilet Goods Ass'n v. Garner*, 387 U.S. 158, 164 (1967)); *see also Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 780-81 (9th Cir. 2000).  HCRC's claim to the contrary (Mot. at 32-33) notwithstanding, the regulation here does not fit within this exception.  The regulation merely establishes procedures by which the Attorney General will receive state requests for certification, solicit public comment on those requests, and make a certification decision after a review of these submissions.  Any substantive effect from this process flows from the certification decision, which has yet to be made; the regulation itself does not create any substantive legal rights or obligations.  *See Municipality of Anchorage v. United States*, 980 F.2d 1320, 1325 (9th Cir. 1992) (claim that APA notice and comment was required for rule was not ripe in advance of rule's application in particular context).[3]

Second, there would be no hardship to the parties if this Court were to defer consideration of HCRC's claims.  HCRC argues that it would suffer hardship in that it would face legal uncertainty if the State of California were to apply for certification pending the resolution of its claims in this lawsuit.  A party's uncertainty as to the state of the law alone, however, does not qualify as the sort of hardship that could render an issue

_____

[3] For the same reason, the regulation is not a "final agency action" that is reviewable under the APA, as it does not itself establish any substantive legal rights or obligations. *See Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).

- 10 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

ripe for judicial decision. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 811; *NRDC v. Abraham*, 388 F.3d 701, 706-07 (9th Cir. 2004). The hardship that HCRC would face, if any, would flow only if California were later to be awarded certification. Thus, both because the Plaintiff's abstract legal claims are not fit for judicial decision in the absence of a concrete application of the new regulation, and because no hardship would be caused if those abstract claims were to be deferred until the regulation is applied in an actual certification decision, those claims are not ripe.[4] Both because the Plaintiff lacks standing to present these claims and because the claims are not ripe, this Court lacks jurisdiction over the Plaintiff's claims seeking to invalidate the regulation.

## II. The Newly-Raised Counts Fail to State a Claim

### A. The Attorney General Was Not Obligated to Follow Notice and Comment Procedures to Issue the Regulation

HCRC asserts that the Attorney General did not provide adequate notice, and opportunity to comment, before issuing the final rule. In particular, it argues that: (1) the Attorney General failed to provide adequate notice of several statements in the preamble for the final rule interpreting the statutory requirements for certification; (2) that he failed to respond adequately to certain comments; (3) that the rulemaking is invalid because the Attorney General failed to provide notice of allegedly improper ex parte communications; and (4) that the rulemaking is invalid because the Attorney General failed to provide notice of allegedly disqualifying bias on the part of the decision-maker. A threshold flaw

---

[4] The ripeness doctrine applies with particular given force here, given that Congress specified the D.C. Circuit as the exclusive forum for review of the Attorney General's certification decisions. 28 U.S.C. § 2265(c). HCRC attempts to pre-empt the D.C. Circuit's exclusive jurisdiction by raising arguments here that are more appropriately addressed by that court, after a concrete application of the regulation in a certification decision. The presentation of its claims here can result only "in duplicate effort, confusion, and potential for conflicting results," and its claims accordingly are not fit for decision. *Pub. Utility Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 627 (9th Cir. 1985).

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

in HCRC's argument, however, is the assumption that notice-and-comment procedures were required for the rule.  To the contrary, to the extent that HCRC challenges the specification of the certification procedures in 28 C.F.R. § 26.23, its challenge is to a procedural rule for which notice and comment was not required.  Contrary to a legislative rule – that is, a rule with the force of law, promulgated pursuant to a delegation of authority from Congress – a "rule[] of agency organization, procedure, or practice" is exempt from the notice-and-comment requirement of the APA.  5 U.S.C. § 553(b)(3)(A). A "technical regulation of the form of agency action and proceedings," like the rule at issue here – even a technical rule with a substantive impact, unlike the rule at issue here – falls within this exemption.  *S. Cal. Edison Co. v. FERC*, 770 F.2d 779, 783 (9th Cir. 1985); *see also Erringer v. Thompson*, 371 F.3d 625, 633 n. 15 (9th Cir. 2004) (cited by HCRC, Mot. at 8, incorrectly for the opposite proposition).

Further, to the extent that HCRC seeks to challenge the Attorney General's discussion of the requirements for the certification in the remainder of the regulation, 28 C.F.R. §§ 26.20 - 26.22, that discussion is only an interpretive rule, not a legislative rule, and so also is exempt from notice and comment.  *See* 5 U.S.C. § 553(b)(3)(A). "[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule.  Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress."  *Erringer*, 371 F.3d at 630; *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88 (1995).  Here, Congress did not delegate to the Attorney General the authority to create new rights or to impose new obligations; instead, it only required him to issue regulations "to implement the certification procedure."  28 U.S.C. § 2265(b). Nor did the Attorney General purport to issue a rule with independent legal effect.[5]

_____

[5] As discussed in greater detail below, HCRC in particular disputes several statements in the regulatory preamble to the effect that the statute foreclosed the Attorney General from imposing additional requirements for certification beyond those expressly

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

Accordingly, the APA did not require the Attorney General to follow notice-and-comment procedures before promulgating the certification rule, and HCRC cannot state a viable claim for a supposed failure to provide adequate notice and comment.

HCRC does not actually challenge either the procedural requirements specified in 28 C.F.R. § 26.23 or the interpretive rule specified in 28 C.F.R. §§ 26.20 - 26.22.  It instead disputes several statements in the preamble to the rule, which describe interpretations of the governing statute that HCRC would wish to contest.  But the explanatory language in the preamble was published in *response* to public comment; it simply defies logic to require an agency to anticipate comments and publish the response to those comments in a proposed rule.  Moreover, the preamble here has no independent legal effect at all, and so is not subject to challenge.  *See Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1222-23 (D.C. Cir. 1996) (preamble to rule, as opposed to rule itself, is subject to APA challenge only if it has independent legal effect).  And even if the discussion in the preamble could be described as a "rule" at all, that discussion could only be an interpretive rule, which, as discussed above, is exempt from notice and comment.  *See* 5 U.S.C. § 553(b)(3)(A).  Accordingly, because the APA did not require the Attorney General to follow notice-and-comment procedures before promulgating the certification rule, HCRC cannot state a viable claim for a supposed failure to provide adequate notice and comment.

---

stated in the statute.  *See* 28 U.S.C. § 2265(a)(3).  If there were any doubt – and there is none – that the Defendants did not promulgate a legislative rule, this statement would confirm that the Defendants had foresworn any effort to promulgate a rule with "force of law" independent of the statute itself.  *See Chief Probation Officers v. Shalala*, 118 F.3d 1327, 1337 (9th Cir. 1997) (cited by HCRC, Mot. at 18, incorrectly for the opposite proposition).

- 13 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.    The Final Regulation Was a Logical Outgrowth of the Proposed Rule

HCRC argues (Mot. at 5-19) that the Attorney General failed to provide an adequate opportunity to comment on several statements in the regulation's preamble interpreting the statutory or regulatory language, namely, statements to the effect that: (1) Congress intended the new chapter 154 to overrule several previous judicial decisions; (2) the statute prevents the Attorney General from imposing additional requirements for certification beyond those expressly stated in the statute itself; and (3) the process for adjudicating state certification requests would be an APA adjudication, not an APA rulemaking.  It is difficult to understand HCRC's claim that it lacked adequate notice to comment on the rule, given that it (correctly) concedes that "the final rule is nearly identical to the proposed regulations."  (Mot. at 25 n. 22.)[6]

The close identity between the proposed rule and the final rule demonstrates that the Defendants provided adequate notice and opportunity to comment.  An agency provides adequate notice for a rule so long as the final rule is a "logical outgrowth" of the proposed rule, that is, so long as the final rule is "reasonably foreseeable."  *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2351 (2007).  Under this test, "a final regulation that varies from the proposal, even substantially, will be valid as long as it is in character with the original proposal and a logical outgrowth of the notice and comments."  *Envt'l Defense Ctr. v. EPA*, 344 F.3d 832, 851 (9th Cir. 2003).  "In determining whether notice was adequate, we consider whether the complaining party should have anticipated that a particular requirement might be imposed.  The test is whether a new round of notice and comment would provide the first opportunity for interested parties to offer comments that could persuade the agency to modify its rule."  *Id.*  Here, HCRC's claim, essentially, is that language in the preamble to the final rule should also have been included in the

---

[6]  The Defendants made only six changes between the proposed rule and the final rule, most of which were semantic.  *See* 73 Fed. Reg. at 75,327 (listing changes).

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

- 14 -

preamble to the proposed rule.  However, "the APA [unlike the Clean Air Act, which was also at issue in that case] requires an agency to explain its reasoning only when it issues a final rule."  *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 519 (D.C. Cir. 1983) (cited by HCRC, Mot. at 12, incorrectly for the opposite conclusion).[7]

Viewed in this light, HCRC's three arguments of inadequate notice would be meritless, even if the fictions were to be engaged that notice and comment procedures were required for the rule, or that the "logical outgrowth" rule applies to explanatory language in a preamble as opposed to a rule itself.  It claims, first, that the public lacked notice that the Attorney General would contend that the new statute invalidated prior judicial decisions concerning certification requirements, and that it could have addressed a supposed separation of powers difficulty if it had been aware of that contention.  (Mot. at 9.)  But HCRC elsewhere in its brief refers to comments that it, and other parties, submitted during the comment period on that issue.  (Mot. at 21.)  It is not surprising that HCRC would have recognized the possibility of such an interpretation, given the specific language in 28 U.S.C. § 2265(a)(3) that no requirements for certification may be imposed beyond those expressly stated in the statute itself, and the legislative history reciting that that provision was enacted to overcome judicial decisions that had interpreted the standards under prior law overly restrictively.  *See* 152 Cong. Rec. S1624-25 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl); 151 Cong. Rec. E2639-40 (daily ed. Dec. 22, 2005) (statement of Rep. Flake).

---

[7]  HCRC also relies on *Louis v. Dep't of Labor*, 419 F.3d 970 (9th Cir. 2005), to argue that a notice of proposed rulemaking that does not adequately notify the public of the "true nature" of a rule is invalid.  But, in *Louis*, the Federal Register notice was not identified as a notice of proposed rulemaking; the proposed rule was buried in an otherwise "non-controversial" publication that was 133 pages long; and the notice did not invite comment on the proposed rule.  Here, the notice of proposed rulemaking was four pages long, and directly recited the rule that the Attorney General proposed to adopt.  *Louis* is completely inapposite.

- 15 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

Second, HCRC argues (Mot. at 15) that the Attorney General failed to provide adequate notice that, in the final rule, he would decline to specify further standards for a state to meet to qualify for certification, or that he would justify this decision in the final rule's preamble by referring to Section 2265(a)(3)'s bar on requirements for certification beyond those expressly stated in the statute itself.  In essence, HCRC argues that it anticipated that the final rule would depart from the proposed rule by specifying those further standards, and that it could not have anticipated that the final rule instead would track the proposed rule on this score.  (*See* Mot. at 17-18.)  This turns the "logical outgrowth" rule on its head; the Attorney General obviously provided adequate notice of the final rule to the extent that it is identical to the proposed rule.  And, given both the specific language of Section 2265(a)(3), and the reference to that provision in the notice of proposed rulemaking, 72 Fed. Reg. at 31,217-18, it cannot have been a surprise that the Attorney General would adhere to his understanding of the limits of his regulatory authority.  *See also* 72 Fed. Reg. 44,816, 44,816 (Aug. 9, 2007) (same understanding expressed in notice reopening comment period).

Third, HCRC argues (Mot. at 19-20) that it could not have anticipated that, in the preamble to the final rule, the Attorney General would describe the process of reaching a certification decision as an informal adjudication instead of as a rulemaking.  But, again, the language on this score in the final rule is identical to the language in the proposed rule.  An appropriate state official may file a request for certification; the Attorney General will publish notice of the request and solicit comment; and he will reach a decision after a review is completed of the request and any submitted comments.  28 C.F.R. § 26.23.[8]  This process is obviously an adjudication, not a rulemaking, under the

_____

[8] The final rule modifies the provision in the proposed rule concerning the treatment of changes in capital counsel mechanisms and state requests for recertification.  *See* 73 Fed. Reg. at 75,335-36 (discussing modification of 28 C.F.R. § 26.23(e) in response to public comments).  As issues concerning recertification or decertification

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

- 16 -

1  APA.  The certification decision does not prescribe future law, but instead adjudicates

2  whether a state has complied with the requirements of existing law; such a decision fits

3  classically into the APA's definition of an adjudication.  *See Bowen v. Georgetown Univ.*

4  *Hosp.*, 488 U.S. 204, 218-21 (1988) (Scalia, J., concurring).  If HCRC believed to the

5  contrary, the confusion was solely its own.

6      In sum, the proposed rule – which, as HCRC concedes, is virtually identical to the

7  final rule – provided adequate notice to the public to allow interested parties to comment

8  on its terms.  Even if the APA's notice and comment requirements applied to a procedural

9  or interpretive rule (and they do not), and even if a plaintiff could raise a "logical

10  outgrowth" claim to a regulatory preamble as opposed to the rule itself (and it cannot), the

11  Attorney General easily satisfied the APA's requirements for the provision of adequate

12  notice of the matters to be addressed in a final rule.[9]

13

14  _____

15  procedures were addressed in numerous comments, including those submitted by HCRC,
    there is no dispute that the proposed rule provided adequate notice relating to this issue to
16  permit public comment.  *See, e.g.,* comments submitted by the Criminal Justice Legal
    Foundation (rulemaking file publicly available at regulations.gov, docket number DOJ-
17  2007-0110, document number DOJ-2007-0110-0057, at p. 4); the University of
    California, Berkeley, School of Law Death Penalty Clinic Faculty (DOJ-2007-0110-
18  0049.1, at p. 3); the American Bar Association (DOJ-2007-0110-0102, at p. 16); the
    Federal Public Defenders (DOJ-2007-0110-0180, at p. 27); and the Habeas Corpus
19  Resource Center (DOJ-2007-0110-0162.1, at pp. 61-62).

20

21      [9]  Throughout its brief, HCRC raises in conclusory fashion due process claims in
    addition to its APA claims.  The due process claims are doubly misplaced.  First, as a
22  state agency, HCRC is not a "person" that would possess rights under the Due Process
    Clause.  *See South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966); *Premo v.*
23  *Martin*, 119 F.3d 764, 771 (9th Cir. 1997).  Second, the Due Process Clause applies only
    to individualized decisionmaking, and thus does not apply to a rulemaking.  *See United*
24  *States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 244-45 (1973) (citing *Bi-Metallic Inv.*
    *Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).  In any event, apart from
25  conclusory citations, HCRC presents no reason to believe that the Attorney General's
    compliance with the APA in his rulemaking somehow failed to afford it any process that
26  was due.  *Cf. Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1995) (if action is
27  legislative, not adjudicatory in nature, due process is satisfied if body "performs its

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
- 17 -                        Motion for Partial Dismissal of Amended Complaint

**C.   The Attorney General Provided a Reasoned Explanation for the Regulation**

HCRC next asserts (Mot. at 20-21), briefly, that the final rule is invalid, in that the Attorney General acted arbitrarily and capriciously by failing to respond to certain comments issued in response to the proposed rule.  This Court's review under this standard is narrow: "we will not vacate an agency's decision unless it 'has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2529-30 (2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1094 (9th Cir. 2008).  Where the APA's notice and comment provisions do apply (unlike here), an agency would act arbitrarily by failing to consider significant comments.  However, "'comments must be significant enough to step over a threshold requirement of materiality before any lack of agency response or consideration becomes of concern.  The comment cannot merely state that a particular mistake was made . . .; it must show why the mistake was of possible significance in the results.'"  *Citizens for Clean Air v. EPA*, 959 F.2d 839, 845 (9th Cir. 1992) (quoting *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 553 (1978)) (ellipses in original).  In other words, "[a]n agency's failure to respond to comments will not support reversal unless it reveals that the agency's decision was not based on consideration of the relevant factors."  *Safari Aviation, Inc. v. Garvey*, 300 F.3d 1144, 1151 (9th Cir. 2002).

responsibilities in the normal manner prescribed by law").

- 18 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

Without further explanation, HCRC cites to four subject matters raised in comments that it contends that the Attorney General did not adequately address.  It is incorrect on each count.  First, the Attorney General responded to comments concerning the effect of prior judicial decisions by noting changes in the current statute from the provisions in the prior chapter 154 that those decisions had construed, including the specification in the new chapter 154 that requirements for certification may be imposed only to the extent that they are expressly stated in the statute itself.  *See* 73 Fed. Reg. at 75,327-29 (discussing 28 U.S.C. § 2265(a)(3) and other changes in chapter 154, and legislative history relating that amendments were motivated to overcome prior judicial decisions); *id.* at 75,332-33 (explaining supersession of prior judicial decisions by statutory changes).[10]  Second, the Attorney General addressed the role that particular examples play in the rule by explaining that the examples are illustrative only, and that the examples of qualifying mechanisms flow from his understanding that the statute does not empower him to establish standards for certification beyond those specified in the

_____

[10]  HCRC's suggestion, to the effect that this result would create a separation of powers problem, is simply wrong.  "[I]t is of no constitutional consequence that legislation affects, or is even directed at, a specific judicial ruling so long as the legislation modifies the law."  *Ecology Ctr. v. Castaneda*, 426 F.3d 1144, 1149 (9th Cir. 2005) (citing *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992)).  "*Robertson* indicates a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way."  *Id.* at 1150.  Here, Congress changed the law by enacting complete new versions of Sections 2261(b) and 2265, replacing the previous provisions, and making other significant changes to the chapter.  Unlike prior law, chapter 154 now specifies that only its express terms govern the standards for certification, 28 U.S.C. § 2265(a)(3).  The amendments to chapter 154 also modified provisions of prior law relating to matters such as the continuation or replacement of counsel at the collateral review stage, and the establishment of a single standard for certification without regard to whether a state has a unitary or bifurcated system of postconviction review.  *See* 28 U.S.C. §§ 2261(b), (d), 2265; *see generally* 73 Fed. Reg. at 75,327, 75,332-33 (describing statutory changes).

- 19 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

statute itself.  73 Fed. Reg. at 75,327-28, 75,331.  Third, the Attorney General addressed

comments concerning the federal specification of the role for the state attorney general,

noting his conclusion that it would be appropriate, as a general matter, for the state

attorney general to serve as his or her state's "appropriate state official" for several

reasons, including the fact that state attorneys general were able to seek certification

under prior law.  73 Fed. Reg. at 75,329-30.  Fourth, the Attorney General addressed

comments concerning the procedures for the submission of certification applications and

public comments, noting his conclusion that the procedures would be adequate to provide

him with the information needed to make a certification decision.  73 Fed. Reg. at 75,333-

34.

   In sum, the Attorney General provided an adequate response for each of the

matters that HCRC briefly, and without explanation, asserts that a response was lacking.

HCRC does not show that he failed to respond to any significant comments.  It does not

attempt to argue that any supposed failure would have been material, or that any supposed

failure would have revealed that the Attorney General failed to consider relevant factors

in the promulgation of the regulation.  Thus, even if the regulation were subject to notice-

and-comment procedures, HCRC would nonetheless fail to state a claim that the Attorney

General acted arbitrarily and capriciously.

   **D.     The Regulation Was Not Tainted by Ex Parte Communications**

   HCRC next argues (Mot. at 25) that the regulation was tainted by allegedly

improper *ex parte* contacts in the form of, for example, inquiries from legislators as to the

agency's progress in initiating and completing the rulemaking process.  But neither

Section 2265 nor any other statute required the Attorney General to promulgate the

regulation after a hearing on the record; consequently, under the APA, this was an

informal rulemaking, not a formal rulemaking.  *See United States v. Florida E. Coast Ry.

Co.*, 410 U.S. 224, 234-38 (1973).  "The APA does not bar ex parte communications in

informal rulemaking proceedings."  *Portland Audubon Soc'y v. Endangered Species*

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

*Comm.*, 984 F.2d 1534, 1540 n. 15 (9th Cir. 1993); *see also Parravanno v. Babbitt*, 837 F. Supp. 1034, 1048 (N.D. Cal. 1993), *aff'd*, 70 F.3d 539 (9th Cir. 1995).

HCRC ignores controlling Ninth Circuit authority, instead citing *Home Box Office v. FCC*, 567 F.2d 9 (D.C. Cir. 1977), as authority prohibiting ex parte contacts in an informal rulemaking.  It fails to note that, even in that court, the ruling in *HBO* was "indefensible" and "short-lived."  1 Richard Pierce, Administrative Law Treatise § 7.6 at 479 (4th ed. 2002).  The D.C. Circuit has since clarified that the rule in *HBO* applies, for the purposes either of the APA or of the Due Process Clause, not to rulemakings that set generally applicable policy, but instead only to administrative actions where private parties are "competing for a specific valuable privilege."  *Action for Children's Television v. FCC*, 564 F.2d 458, 475 (D.C. Cir. 1977); *see also Sierra Club v. Costle*, 657 F.2d 298, 400-10 (D.C. Cir. 1981) (noting that it would be inappropriate to require agency to make policy in rulemaking with same constraints on ex parte communications as are applicable to a court).[11]

HCRC also argues that the supposedly improper nature of communications that DOJ employees had with outside persons is revealed by a statement in the notice of proposed rulemaking, to the effect that DOJ consulted both prosecution and defense interests before publishing the proposed rule.  *See* 72 Fed. Reg. at 31,218.  HCRC has made this argument before (Doc. 43), and its argument is no easier to understand when it is repeated.  As the Defendants have previously shown (Doc. 44 at 2-3), they have disclosed to HCRC records relating to communications concerning the proposed rule

---

[11]  HCRC further asserts that the final rule refers to comments that it is unable to locate on the regulations.gov website, and that therefore DOJ must have had further allegedly improper ex parte communications with outside persons.  (Mot. at 6 n. 5; *id.* at 27 n. 25.)  The referenced comments include those of the American Bar Association (DOJ-2007-0110-0102, at p. 9); the Criminal Justice Legal Foundation (DOJ-2007-0110-0057, at p. 4); and the University of California, Berkeley, School of Law Death Penalty Clinic Faculty (DOJ-2007-0110-0049.1, at p. 3.)

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint
- 21 -

between DOJ officials and representatives of the National District Attorneys Association; the National Association of Attorneys General, and representatives of the Arizona, California, Ohio, and Texas state governments.  The Defendants also disclosed to HCRC records relating to communications with the director of the Federal Capital Habeas Project; the law firm of Arnold and Porter, which was acting as counsel for the American Bar Association; the National Association of Criminal Defense Lawyers; and the director of the American Bar Association's death penalty representation project.  The notice of proposed rulemaking's description of these contacts accurately informed the public of the range of consultations that DOJ employees undertook before drafting the proposed rule.  More to the point, neither the fact of these contacts nor the description of them in that notice even remotely suggests any improper behavior on the part of the Attorney General.

### E. The Attorney General Was Not Impermissively Biased in His Promulgation of the Regulation

Finally, HCRC argues (Mot. at 24) that the regulation should be invalidated because the decision-maker – here, the Attorney General – evinced bias in its formulation.  There is a strong presumption that agency decision-makers act in good faith; for that reason, agency action is judged on the basis of the reasons that the agency has stated therefor, and an inquiry into the decision-maker's supposed bad faith is only permitted in exceedingly narrow circumstances.  *See United States v. Morgan*, 313 U.S. 409, 421-22 (1941).  This presumption applies with particular force to rulemakings.  "A decision-maker in an informal rulemaking should be disqualified only when there has been a clear and convincing showing that the agency member has an unalterably closed mind on matters critical to the disposition of the proceeding."  *Alaska Factory Trawler Ass'n v. Baldridge*, 831 F.2d 1456, 1467 (9th Cir. 1987) (citing *Ass'n of Nat'l Advertisers v. FTC*, 627 F.2d 1151, 1170 (D.C. Cir. 1979)).  HCRC does not remotely make such a showing.

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

In an effort to make such a showing, HCRC argues that the notice of proposed rulemaking did not reveal that Margaret Griffey, the Chief of the Capital Case Unit of DOJ's Criminal Division, was one of the members of a working group relating to the formulation of the proposed rule.  But HCRC cites no authority that an agency is required to identify every employee who participates in the drafting of a rule, and we are aware of none.  This Court, of course, is not free to create an otherwise non-existent requirement under the APA.  *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. at 524.  In any event, even in the case of an adjudication – where, unlike in a rulemaking, an inquiry into the decisionmaker's alleged bias may be somewhat more searching – it has long been clear that agency employees with prior experience in a subject area may contribute their expertise to the agency's proceedings:

> Given the roles that agency officials must play in the give-and-take of sometimes rough-and-tumble policy debates, courts must tread lightly when presented with this kind of challenge.  Administrative officers are presumed objective and "capable of judging a particular controversy fairly on the basis of its own circumstances."  *United States v. Morgan*, 313 U.S. 409, 421 (1941).  A party cannot overcome this presumption with a mere showing that an official "has taken a public position, or has expressed strong views, or holds an underlying philosophy with respect to an issue in dispute."  Instead, an agency official should be disqualified only where "a disinterested observer may conclude" that the official "has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it."

*Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562, 571 (D.C. Cir. 2007) (additional citations omitted).  Thus, the mere fact that Ms. Griffey previously served in a state government prosecutorial capacity, or took positions in litigation on capital matters, does not remotely state a claim that the APA would require her not to participate in the rulemaking.  Moreover, Ms. Griffey was not the decision-maker, and was not even a drafter of the proposed rule.  Any claim of bias on her part – and there is no valid one – says nothing at all as to whether the Attorney General was unduly biased in the promulgation of the regulation.

- 23 -

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1    In sum, none of the arguments raised by HCRC suffices to state a claim. Both

2   because this Court lacks jurisdiction over the newly-raised claims, and because the

3   newly-raised claims fail as a matter of law, the amended complaint should be dismissed in

4   part.

5                                    **Conclusion**

6    For the foregoing reasons, the Defendants respectfully request that the Court

7   dismiss Counts Seven through Ten in the amended complaint.

8                                                    Respectfully submitted,

9                                                    GREGORY G. KATSAS
                                                     Assistant Attorney General
10

11                                                   JOSEPH P. RUSSONIELLO
                                                     United States Attorney
12

13                                                     /s/ Joel McElvain
                                                     _____
14                                                   JOHN R. TYLER
                                                     Assistant Branch Director
15                                                   JOEL McELVAIN
                                                     Attorney
16                                                   U.S. Department of Justice
                                                     Civil Division, Federal Programs Branch
17                                                   450 Golden Gate Ave., Room 7-5395
                                                     San Francisco, CA 94102
18                                                   Telephone:    (415) 436-6645
                                                     Fax:          (415) 436-6632
19                                                   Email:        Joel.McElvain@usdoj.gov

20                                                   Attorneys for Defendants

21

22

23

24

25

26

27

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint

1

CERTIFICATE OF SERVICE

2          I hereby certify that on January 5, 2009, I electronically filed the foregoing Notice

3   of Motion, and Motion to Dismiss the Amended Complaint in Part with the Clerk of the

4   Court, using the CM/ECF system, which will send notification of such filing to the

5   counsel of record in this matter who are registered on the CM/ECF system.

6

7

8                                    ___/s/ Joel McElvain_____
                                     JOEL McELVAIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Dismissal of Amended Complaint