IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HABEAS CORPUS RESOURCE CENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE<br>and MICHAEL B. MUKASEY, in his<br>official capacity as Attorney General<br>of the United States,<br><br>    Defendants. | No. C 08-2649 CW<br><br>ORDER GRANTING<br>PLAINTIFF'S MOTION<br>FOR A PRELIMINARY<br>INJUNCTION |

   Plaintiff Habeas Corpus Resource Center moves for a preliminary injunction barring Defendants U.S. Department of Justice (DOJ) and Michael Mukasey from making effective the regulation entitled "Certification Process for State Capital Counsel Systems," which is to be codified at 28 C.F.R. Part 26. Defendants oppose the motion.

                              BACKGROUND

   Chapter 154 of Title 28 of the United States Code provides for expedited procedures in federal capital habeas corpus cases when a state is able to establish that it has provided qualified, competent, adequately resourced and adequately compensated counsel

in state post-conviction proceedings to inmates facing a capital sentence.  Under the Antiterrorism and Effective Death Penalty Act of 1996, which added Chapter 154 to the Code, federal courts were responsible for determining whether states were eligible for the expedited federal procedures.  The eligibility criteria were contained in § 2261(b), which provided:

> (b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

28 U.S.C. § 2261(b) (2005).

The USA PATRIOT Improvement and Reauthorization Act of 2005 (the Patriot Act), Pub. L. No. 109-174, 120 Stat. 192 (2005), amended Chapter 154 to shift the eligibility determination from the federal courts to the Attorney General.  It replaced § 2261(b) with a new provision that states:

> (b) <u>Counsel.</u>--This chapter is applicable if--
>
>> (1) the Attorney General of the United States certifies that a State has established a mechanism for providing counsel in postconviction proceedings as provided in section 2265; and
>
>> (2) counsel was appointed pursuant to that mechanism, petitioner validly waived counsel, petitioner retained counsel, or petitioner was found not to be indigent.

28 U.S.C. § 2261(b).  Section 2265, which was also added by the Patriot Act amendments, provides:

> (a) <u>Certification.</u>--
>
>> (1) <u>In general.</u>--If requested by an appropriate

2

        State official, the Attorney General of the United States shall determine--

            (A) whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;

            (B) the date on which the mechanism described in subparagraph (A) was established; and

            (C) whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A).

        (2) <u>Effective date.</u>--The date the mechanism described in paragraph (1)(A) was established shall be the effective date of the certification under this subsection.

        (3) <u>Only express requirements.</u>--There are no requirements for certification or for application of this chapter other than those expressly stated in this chapter.

    (b) <u>Regulations.</u>--The Attorney General shall promulgate regulations to implement the certification procedure under subsection (a).

    (c) <u>Review of certification.</u>--

        (1) <u>In general.</u>--The determination by the Attorney General regarding whether to certify a State under this section is subject to review exclusively as provided under chapter 158 of this title.

        (2) <u>Venue.</u>--The Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction over matters under paragraph (1), subject to review by the Supreme Court under section 2350 of this title.

        (3) <u>Standard of review.</u>--The determination by the Attorney General regarding whether to certify a State under this section shall be subject to de novo review.

28 U.S.C. § 2265.

    On June 6, 2007, the Attorney General published a notice of proposed rulemaking (NPRM) that would implement a procedure by

3

which states could be certified under Chapter 154.  The requirements for certification were contained in a single section, which the Attorney General proposed codifying as 28 C.F.R. § 26.22:

> A State meets the requirements for certification under 28 U.S.C. 2261 and 2265 if the Attorney General determines each of the following to be satisfied:
>
> > (a) The State has established a mechanism for the appointment of counsel for indigent prisoners under sentence of death in State postconviction proceedings.  As provided in 28 U.S.C. 2261(c) and (d), the mechanism must offer to all such prisoners postconviction counsel, who may not be counsel who previously represented the prisoner at trial unless the prisoner and counsel expressly request continued representation, and the mechanism must provide for the entry of an order by a court of record--
> >
> > > (1) Appointing one or more attorneys as counsel to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;
> > >
> > > (2) Finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or
> > >
> > > (3) Denying the appointment of counsel, upon a finding that the prisoner is not indigent.
>
> . . .
>
> (b) The State has established a mechanism for compensation of appointed counsel in State postconviction proceedings.
>
> . . .
>
> (c) The State has established a mechanism for the payment of reasonable litigation expenses.
>
> . . .
>
> (d) The State provides competency standards for the appointment of counsel representing indigent prisoners in capital cases in State postconviction proceedings.

<u>Certification Process for State Capital Counsel Systems</u>, 72 Fed. Reg. 31217, 31219-20 (proposed June 6, 2007) (to be codified at 28

4

C.F.R. Part 26). The entirety of the stated rationale for this section was:

> Section 26.22 sets out the requirements for certification that a State must meet to qualify for the application of chapter 154. These are the requirements expressly set forth in 28 U.S.C. 2261(c)-(d) and 2265(a)(1). With respect to each of the requirements, examples are provided in the text of mechanisms that would be deemed sufficient or, in some cases, insufficient to comply with the chapter. The examples given of qualifying mechanisms are illustrative and therefore do not preclude States with other mechanisms for providing counsel in postconviction proceedings from meeting the requirements for certification.

Id. at 31218.

The NPRM established a sixty-day period during which interested parties could submit their comments on the proposed rule to the Attorney General. The comment period was subsequently re-opened for an additional forty-five days. 72 Fed. Reg. 44816 (Aug. 9, 2007).

According to the final rule, which was published on December 11, 2008, the Attorney General received more than 32,000 comments in response to the NPRM. Certification Process for State Capital Counsel Systems, 73 Fed. Reg. 75327, 75327 (Dec. 11, 2008) (to be codified at 28 C.F.R. Part 26). A number of comments complained that the proposed rule was vague and urged the Attorney General to "provide further specification concerning the 'standards of competency,' 'competent counsel,' 'compensation' of appointed counsel, and 'reasonable litigation expenses' that a state's postconviction capital system must provide to qualify" for certification. Id. at 75330.

> For example, three U.S. Senators submitted comments stating that the proposed rule failed to provide adequate guidance to states about meeting the requirements of chapter 154. These Senators argued that the proposed

5

> rule conflicted with a legislative intent to ensure competent counsel for state capital convicts in exchange for expedited federal habeas corpus review. They cited in support certain statements by the sponsors of the 2006 amendments that they viewed as implying that the rule must require states to provide "adequate" or "quality" counsel for such convicts. According to these Senators, the rule should specify what would constitute adequate counsel and ensure that the states provide such counsel.
>
> Similarly, the Judicial Conference of the United States in its comments urged elaboration or supplementation of the statutory requirements, to make clear what states must do for certification and to ensure that capital defendants receive adequate representation in state postconviction proceedings.

Id. at 75330-31.

In the preamble to the final rule, the Attorney General rejected any suggestion that he had the authority to define the relevant terms. With respect to the term, "competent counsel" the preamble stated:

> The commenters are correct that the text of chapter 154 needs to be supplemented in defining competency standards for postconviction capital counsel, but mistaken as to who must effect that supplementation. Responsibility to set competency standards for postconviction capital counsel is assigned to the states that seek certification.

Id. at 75331. The Attorney General took the same approach with respect to his authority to establish standards for compensation of counsel and payment of reasonable litigation expenses, thereby leaving these matters to the discretion of the states seeking certification. Id. at 75332. In addition, the Attorney General expressed his view for the first time that existing case law interpreting the requirements of Chapter 154 was invalidated by the Patriot Act amendments' specification that there are "no requirements for certification or for application of this chapter other than those expressly stated in this chapter." See id.

6

The final rule is largely unchanged from the version contained in the NPRM. The primary substantive change to the rule was the deletion of a portion of proposed § 26.23(e) that had provided, "If a State with a certified mechanism amends governing State law to change its mechanism in a manner that may affect satisfaction of the requirements of § 26.22, the certification of the State's mechanism prior to the change does not apply to the changed mechanism, but the State may request a new certification by the Attorney General that the changed mechanism satisfies the requirements of § 26.22." 72 Fed. Reg. at 31220. The final version of the rule instead provides that, once a state is certified, it will remain certified even if it makes changes to its appointment mechanism. See 73 Fed. Reg. at 75339. Thus, under the final rule, a state could completely eliminate the right to counsel in capital post-conviction proceedings and continue to benefit from expedited review under Chapter 154.

Plaintiff is an agency of the State of California that provides legal representation to indigent defendants in state and federal post-conviction proceedings in California. Its amended complaint challenges the sufficiency of the notice provided in the NPRM. It claims that, although the final rule des not vary significantly from the proposed rule, the Attorney General's explanation of the rationale underlying the rule, made in response to comments and published for the first time in the preamble to the final rule, reveals an interpretation of the statute and the rule that has an impact beyond what interested parties could have foreseen based solely on the text of the rule itself. Plaintiff asserts that, in failing to provide notice of the scope of the

7

rule, Defendants deprived it of its right under the Administrative Procedures Act (APA) to comment meaningfully on the rule before it was promulgated. See 5 U.S.C. § 553(c).

On January 8, 2009, the Court issued a temporary restraining order and enjoined Defendants from making the final rule effective on January 12, 2009 as planned.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008). "[T]he required showing of harm varies inversely with the required showing of meritoriousness." Indep. Living Ctr. of S. Cal., Inc. v. Shewry, 543 F.3d 1047, 1049 (9th Cir. 2008) (quoting Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987)). "When the balance of harm 'tips decidedly toward the plaintiff,' injunctive relief may be granted if the plaintiff raises questions 'serious enough to require litigation.'" Id. (quoting Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978)).

## DISCUSSION

I. Standing

Defendants argue that Plaintiff lacks standing to pursue its claims and thus cannot satisfy Article III's "case or controversy" requirement. A plaintiff "has the burden of establishing the three elements of Article III standing: (1) he or she has suffered an

8

1  injury in fact that is concrete and particularized, and actual or
2  imminent; (2) the injury is fairly traceable to the challenged
3  conduct; and (3) the injury is likely to be redressed by a
4  favorable court decision." Salmon Spawning & Recovery Alliance v.
5  Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).  "Article III
6  standing requires an injury that is actual or imminent, not
7  conjectural or hypothetical." Cole v. Oroville Union High School
8  Dist., 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotation
9  marks omitted).  "A plaintiff may allege a future injury in order
10 to comply with this requirement, but only if he or she 'is
11 immediately in danger of sustaining some direct injury as the
12 result of the challenged official conduct and the injury or threat
13 of injury is both real and immediate, not conjectural or
14 hypothetical.'" Scott v. Pasadena Unified School Dist., 306 F.3d
15 646, 656 (9th Cir. 2002) (quoting City of Los Angeles v. Lyons, 461
16 U.S. 95, 102 (1983)).

17      Defendants assert that Plaintiff will not suffer any injury
18 merely by the final rule entering into effect.  Rather, they claim,
19 Plaintiff will suffer an injury only after California applies for
20 and receives certification from the DOJ.  This argument, however,
21 addresses the injury to Plaintiff flowing from the substance of the
22 rule.  Plaintiff's challenges are to procedural defects underlying
23 the rule's promulgation -- in particular, Defendants' failure to
24 afford Plaintiff an opportunity to participate meaningfully in the
25 notice and comment process.  Viewed in this light, Plaintiff has
26 already been injured by the challenged conduct.  Standing can be
27 premised on this type of procedural injury, so long as the
28 plaintiff can "show that the procedures in question are designed to

United States District Court
For the Northern District of California

9

protect some threatened concrete interest of his" and that there is a "reasonable probability" that the challenged action threatens that interest. Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961, 970-71 (9th Cir. 2003). Because Plaintiff's ability to represent the interests of its clients in federal habeas proceedings is implicated by California's potential certification under the rule, Plaintiff has a concrete interest that is reasonably likely to be threatened by the rule. The notice-and-comment procedures of the APA are designed to afford parties an opportunity to present their views on rules that affect their interests. See Am. Radio Relay League, Inc. v. FCC, 524 F.3d 227, 236 (D.C. Cir. 2008). Plaintiff therefore has standing to pursue its claims of procedural injury for failure to observe those procedures.

II. Ripeness

Defendants also argue that Plaintiff's APA claims are not ripe for review. They note that the ripeness doctrine serves "to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), superseded in non-relevant part by statute, Pub. L. 94-574, 90 Stat. 2721 (1976), as recognized in Califano v. Sanders, 430 U.S. 99, 105 (1977). According to Defendants, Plaintiff's claims will not be ripe until the Attorney General has applied the challenged regulation to an actual certification request. However, Defendants' position again

is based on characterizing Plaintiff's claims as pertaining to the substance of the rule. Plaintiff does not presently challenge the rule as contrary to Chapter 154; it challenges only Defendants' failure to afford it a meaningful opportunity to provide comments on the rule. Because the alleged procedural violations have already occurred, no additional facts remain to be developed and adjudicating Plaintiff's claim would not involve abstract disagreements. See Citizens for Better Forestry, 341 F.3d at 977. Plaintiff's claims are therefore ripe.

III. Likelihood of Success on the Merits

    A.   Requirement of Notice-and-Comment Procedures

The APA requires an agency to publish notice of "either the terms or substance of [a] proposed rule or a description of the subjects and issues involved," in order to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b)-(c). Defendants argue that they were not required to adhere to notice-and-comment rulemaking procedures, however, because theirs is an "interpretive rule," and the relevant provisions of the APA do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A).

"In general terms, interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." Hemp Indus. Ass'n v. Drug Enforcement Admin., 333 F.3d 1082, 1087 (9th

11

Cir. 2003). The distinction "turns on an agency's intention to bind itself" to a particular position. U.S. Tel. Ass'n v. FCC, 28 F.3d 1232, 1234 (D.C. Cir. 1994).

The present rule was not an "interpretive" rule that was exempt from the APA's notice-and-comment requirements. It provided the "missing link" that was necessary to implement Chapter 154. If the rule goes into effect, states will be able to claim a right that they do not presently have. It is also clear that the DOJ intends to bind itself to the requirements set out in the rule; the preamble disavows any degree of discretion on the Attorney General's part. In addition, the DOJ's treatment of the rule to date belies its present assertion that the rule is simply interpretive. The DOJ classified the rule as a "major regulatory action" and purported to abide by the APA's notice-and-comment procedures.

For these reasons, Plaintiff has a high likelihood of success on the merits of this issue.

B.  Adequacy of Notice

As noted above, the APA "requires an agency conducting notice-and-comment rulemaking to publish in its notice of proposed rulemaking 'either the terms or substance of the proposed rule or a description of the subjects and issues involved.'" Long Island Care at Home, Ltd. v. Coke, ___ U.S. ___, 127 S. Ct. 2339, 2351 (2007) (quoting 5 U.S.C. § 553(b)(3)). The test for sufficiency of notice under the APA "is whether the notice fairly apprises interested persons of the subjects and issues before the Agency." Louis v. U.S. Dep't of Labor, 419 F.3d 970, 975 (9th Cir. 2005) (internal quotation marks omitted). Plaintiff alleges that the

12

NPRM failed to provide adequate notice of the nature of Defendants' proposed rule because the "import and impact" of the rule was neither clear on its face nor disclosed in the preamble. See Natural Res. Def. Council, Inc. v. Hodel, 618 F. Supp. 848, 874-75 (E.D. Cal. 1985).

To rebut Plaintiff's asertion, Defendants rely primarily on the fact that the final rule did not differ substantially from the proposed rule. They note that "a final regulation that varies from the proposal, even substantially, will be valid as long as it is in character with the original proposal and a logical outgrowth of the notice and comments." Envtl. Def. Ctr., Inc. v. EPA, 344 F.3d 832, 851 (9th Cir. 2003) (internal quotation marks omitted). Nonetheless, even where the text of the rule itself does not change, notice may be insufficient if "the presentation of [] information obscures the intent of the agency" and allows substantive rules to be enacted "through the back door." Louis, 419 F.3d at 975. "An interested member of the public should be able to read the published notice . . . and understand the essential attributes" of the proposed action. Id. (internal quotation marks omitted).

Louis involved a rule that was introduced and described in a way that suggested it was nothing more than a description of records systems and their proposed routine uses. In reality, portions of the rule itself exempted certain records systems from disclosure requirements imposed by the Privacy Act. As a result, even though the exemptions were contained in the text of the proposed rule, "potentially controversial subject matter -- exemption of entire systems of records from public disclosure laws"

13

was likely "to go unnoticed buried deep in a non-controversial publication generally describing existing systems and their contents." Louis, 419 F.3d at 976.

The present case is analogous to Louis. Although the final rule did not differ significantly from the proposed rule, Plaintiff has established that notice was inadequate because the NPRM did not reveal the Attorney General's view that the Patriot Act amendments invalidated existing case law interpreting the requirements of Chapter 154, nor his intention to turn over responsibility for evaluating the adequacy of state-created standards to the very states that created them.[1] The Ninth Circuit stressed in Louis "the importance of a notice's heading and summary in 'alerting a reader to the stakes'" involved in the rule's passage. Id. at 976 (quoting McLouth Steel Prods. Corp. v. Thomas, 838 F.2d 1317 (D.C. Cir. 1988)). Here, the summary of the rule in the NPRM did not convey the gravity of the Attorney General's action. Cf. Hodel, 618 F. Supp. at 874-75 ("Given the actual impact of the new rule, the notice was patently misleading. A member of the public would be lulled into believing, by virtue of defendants' mischaracterization, that the change was designed only to 'eliminate redundancy,' when, in fact, a basic policy readjustment was underway.")

The Patriot Act amendments did not alter the requirements of former § 2261(b) that states were eligible for certification only

---

[1] Plaintiff also claims that the NPRM did not give adequate notice: 1) that individual certification decisions would be considered adjudications, rather than rulemakings, under the APA; and 2) of the Department of Justice personnel who were responsible for drafting the rule. Because the Court finds that notice was inadequate for other reasons, it need not consider these arguments.

14

if they had established "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings." These requirements were simply moved to § 2265, and the determination of whether they had been satisfied was transferred from the courts to the Attorney General. While the text of the proposed rule did not specify how the Attorney General would determine the adequacy of a state's competency standards or the actual payment of reasonable litigation expenses and reasonable compensation, nothing in the proposed rule suggested that the Attorney General intended by the rule to abdicate all responsibility for ensuring that a state's standards were adequate in these respects. It was not until the final rule was published that the Attorney General explained his view that states seeking certification would determine for themselves whether their mechanisms were sufficient to ensure that competent, reasonably compensated counsel was actually appointed for defendants in capital cases, and to ensure that reasonable litigation expenses were actually paid. The Attorney General's approach is contrary to a long line of precedent interpreting the requirements of Chapter 154 -- requirements that were not eliminated by the Patriot Act amendments. See, e.g., Spears v. Stewart, 283 F.3d 992 (9th Cir. 2002) (holding that Chapter 154 requires states to comply with their own systems for appointment of counsel); Baker v. Corcoran, 220 F.3d 276 (4th Cir. 2000) (holding that states do not qualify for expedited review under Chapter 154 if they compensate appointed counsel at a rate that causes them to operate at a loss); Wright v. Angelone, 944 F. Supp. 460 (E.D. Va. 1996) (holding that states cannot satisfy the requirements of

15

Chapter 154 unless they impose mandatory standards of competency that require appointed counsel to have "experience and demonstrated competence in bringing habeas petitions").

Defendants point to the comments submitted in response to the NPRM as proof that their notice was sufficient. However, although the comments address the rule's lack of precision in defining the relevant terms and urge the Attorney General to define the terms in a way that incorporates standards articulated in case law, they do not reflect an understanding of the Attorney General's view that such case law was invalidated by the Patriot Act amendments. Nor do they reflect an understanding of his view that he lacks authority to define the relevant statutory terms. If the NPRM had disclosed the Attorney General's controversial interpretation of Chapter 154, it is likely that many commenters would have disputed his view of the law. As it was, the Attorney General adopted his interpretation without the benefit of any such comments.

The Court concludes that the NPRM did not give adequate notice of the actual impact of the rule on state certification. Accordingly, Plaintiff has a high probability of success on the merits of this claim.

C. Bias

Plaintiff also claims that the rule is invalid because the DOJ officials who were involved in drafting it were biased toward prosecution interests. Plaintiff has submitted evidence supporting this conclusion. For example, the chief of the Capital Case Unit in the DOJ's Criminal Division (the agency's prosecutorial branch) was a member of the working group developing the regulation. This individual's professional background suggests that she may have had

a conflict of interest that rendered her involvement in drafting the rule inappropriate. There is also evidence that Senator Kyl of Arizona, who introduced the relevant portions of the Patriot Act amendments in the Senate, and Representative Lungren, the former Attorney General of California, exerted pressure on the DOJ as it drafted the rule. In addition, the evidence suggests that, even though the NPRM stated that working group members met with both prosecution and defense interests when creating the rule, the DOJ was never open to suggestions from members of the latter group.

An agency rule can be invalid if there is "a clear and convincing showing" that officials responsible for developing the rule had "an unalterably closed mind on matters critical to the [rule's] disposition." Alaska Factory Trawler Ass'n v. Baldridge, 831 F.2d 1456, 1467 (9th Cir. 1987). This is because "[a]llowing the public to submit comments to an agency that has already made its decision is no different from prohibiting comments altogether." Nehemiah Corp. of Am. v. Jackson, 546 F. Supp. 2d 830, 847 (E.D. Cal. 2008). Although it would be premature to determine at this point whether the DOJ's rule was so tainted by bias that it was not a valid exercise of rulemaking authority, the evidence submitted by Plaintiff at least raises serious questions on the matter.

IV.  Irreparable Harm, Balance of Equities and the Public Interest

Defendants argue that Plaintiff has not demonstrated a likelihood that it will face irreparable harm if a preliminary injunction does not issue, because Plaintiff does not stand to face any harm until the State of California applies for and obtains certification under the rule. The Court disagrees and finds that Plaintiff has demonstrated a likelihood of irreparable harm

17

sufficient, when considered together with the likelihood of success on the merits, to warrant granting a preliminary injunction.

If the rule goes into effect as planned, the mere possibility that California could apply for certification at any time will immediately thrust Plaintiff into uncertainty over the legal framework that applies to state and federal post-conviction remedies already being pursued on behalf of its clients.  Plaintiff will have to decide how best to allocate its resources and to represent its clients' interests while allowing for the possibility that California may apply for and receive certification in the near future.  If California is certified, the limitations period applicable to federal habeas petitions will be shortened from one year to six months.  Given the uncertainty over the retroactive effect of the new limitations period, see 28 U.S.C. § 2265(a)(2) (providing that a state's certification is retroactive to the date on which its mechanism for appointing counsel was established), if this were to happen, Plaintiff would be forced to file on an expedited basis habeas petitions that were already due as of the date of the certification.  Thus, if the rule goes into effect, Plaintiff must evaluate the possibility that it will have less than the expected one year to develop its clients' federal claims, and must decide whether to refrain from devoting resources to pursuing possibly meritorious claims that it might not be able to develop adequately if it is ultimately forced to file within the shorter period.  Similarly, Plaintiff must immediately decide whether to expedite its pursuit of state post-conviction remedies, possibly at the expense of asserting meritorious claims; the limitations period for federal habeas claims begins to run on the date of final state

18

court affirmance of the conviction on direct review, and is not tolled until the petition for state post-conviction review is filed. Plaintiff faces these decisions even though it would take some amount of time for California to become certified; while Plaintiff could challenge any certification decision, at the time the regulation goes into effect it must account for the possibility that its challenge will not be successful.

Compared to the harm faced by Plaintiff, Defendants stand to face little, if any, harm if the rule does not enter into effect immediately. The Patriot Act amendments were passed in 2005. Defendants did not publish their proposed rule until mid-2007 and did not publish their final rule until the end of 2008. An additional delay pending resolution of this lawsuit will not prejudice them. In addition, the public interest favors maintaining the status quo while the legality of Defendants' rule is determined. Allowing the rule to go into effect for a time, only later to determine it invalid, would serve no purpose. It would waste the resources, not only of taxpayers paying counsel to represent indigent clients whose rights would become uncertain under the rule, but also of states that decide to seek certification before the rule's validity is established, and of courts that must determine whether they are bound by Chapter 154's requirements once states have been so certified.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is GRANTED. Defendants are enjoined during the pendency of these proceedings from putting into effect the rule entitled "Certification Process for State Capital Counsel Systems,"

19

published at 73 Fed. Reg. 75,327 (Dec. 11, 2008), without first providing an additional comment period of at least thirty days and publishing a response to any comments received during such period.

IT IS SO ORDERED.

Dated: 1/20/09

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge